**In re Dorothy Jean LAKE, Debtor.**

**Bankruptcy No. 99–12295.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 18, 2000.

Alan J. Ullman, Lerner, Sampson & Rothfuss, Cincinnati, OH, for creditor Lehman Capital.

Stephen D. Hobt, Cleveland, OH, for debtor.

Myron E. Wasserman, Cleveland, OH, trustee.

## MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Creditor Lehman Capital ("Lehman") holds a note from the Debtor and a mortgage on the Debtor's residence. Lehman filed a Second Amended Proof of Claim in this Chapter 13 case for pre-petition arrearages on the note, including attorney fees (the "Claim"). (Claims Docket No. 12). The only matter in dispute between the parties is whether those fees, provided for in the note and mortgage, are recoverable as part of the amount needed to cure the default. The Debtor objects to the Claim on the ground that the fees are barred by 11 U.S.C. § 1322(e) and Ohio law (the "Objection"). (Docket 28). Lehman denies that this section applies and alleges that state law permits recovery. (Docket 31). Because Ohio law renders the attorney fee terms void, the Debtor's Objection is sustained.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## FACTS[1]

In 1997, the Debtor obtained a loan from WMC Mortgage Corp. which was evidenced by a promissory note (the "Note") and secured by a first mortgage (the "Mortgage") on the Debtor's residence (the "Property"). The Note and Mortgage were assigned to Lehman.

The Note and Mortgage are pre-printed forms, each of which is known as the FNMA/FHLMC Uniform Instrument. The documents have these attorney fee provisions:

1. If the Note is accelerated, the Debtor is obligated to pay Lehman's reasonable attorney fees incurred in enforcing the Note, to the extent not prohibited by applicable law;

2. The Mortgage provides that the Debtor will pay Lehman's reasonable attorney fees associated with protecting its rights in the Property under specified circumstances; and

3. The Debtor has the right under the Mortgage to have its enforcement discontinued under certain conditions, one of which is that the Debtor pay Lehman's attorney fees incurred in enforcing the Mortgage.

When the Debtor defaulted on her loan payments, Lehman accelerated the Note and filed a foreclosure action against the Property. The Debtor then filed this Chapter 13 case. Lehman's Claim is for the principal balance due under the Note, together with an arrearage amount that includes $900 in attorney fees related to the foreclosure action. (Debtor's Brief, p.

---

1. The parties submitted this dispute on Stipulations of Fact and briefs. (Docket 31, 35, 36, 39, 40). Stipulated facts that were not used in the arguments are not recited here.

4). (Docket 36). The Debtor's Chapter 13 plan provides for her to pay the principal balance in regular monthly payments directly to Lehman and to cure the default through the plan.

The parties agree that the Note and Mortgage are governed by Ohio law, the attorney fees incurred by Lehman fall within the terms of the Note and Mortgage, and the fees requested are reasonable in amount.

### THE ISSUE

Is Lehman entitled to recover its attorney fees under the Note and Mortgage as part of the amount needed to cure the Debtor's default in her plan? [2]

### THE POSITIONS OF THE PARTIES

The Debtor argues that she is not responsible for the fees because the cure amount is governed by 11 U.S.C. § 1322(e), and Ohio law, referenced by that section, renders void the attorney fee provisions in these pre-printed instruments. Lehman's position is that § 1322(e) is not relevant because the statute only applies to prevent the payment of interest on the cure amounts and state law does permit collection of fees.

### DISCUSSION

#### 11 U.S.C. § 1322(e)

**A. Does 11 U.S.C. § 1322(e) apply?**

A Chapter 13 plan may provide for the curing of a default. See generally 11

U.S.C. §§ 1322(b)(3) and (5). The Code states that:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.

11 U.S.C. § 1322(e). Section 1322(e) was enacted as part of the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394 § 305, 108 Stat. 4106 (Oct. 22, 1994). The section applies to the Note and Mortgage because they were executed after the effective date of October 22, 1994. Pub.L. No. 103–394 § 702(b)(2)(D), 108 Stat. 4106 (Oct. 22, 1994). Lehman argues that the legislative history indicates the section only applies to bar the payment of interest on cure amounts. (Lehman Brief, pp. 2–3). (Docket 39). As Lehman is not requesting interest on the attorney fees, it contends the statute does not apply, with the only question being whether state law will enforce the fee provision. Lehman does not include any analysis of the statutory language itself. In opposition, the Debtor argues that the statute is unambiguous and applies to this dispute without reference to the legislative history.

■■■■ As this Court has previously noted:

> [t]he starting point for deciding [a dispute over statutory interpretation] is the statute itself. *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995). '[C]ourts must presume that

---

**2.** Initially, the Debtor also objected to Lehman's request for interest on the arrearage, stated in the Claim as "$8,057.90 together with interest thereon at 12.24% per annum, if applicable." The Debtor argues that there is no legal basis for the interest request, including such a claim forces the Debtor to incur expense to object to it, and Lehman is potentially subject to sanctions under Bankruptcy Rule 9011 for making the request. In response, Lehman admits it is not entitled to interest, claiming that it did not really demand interest but only requested it "if appli-

cable." Here, Lehman says, it would not be applicable because the law does not permit it. (Lehman Memorandum, f. 1; and Brief, p. 12). (Docket 31, 39). While this position falls short of the level of candor expected of attorneys who practice in this Court, the issue is moot because Lehman acknowledges no interest is owed and the Debtor is not actually asking for sanctions. (Debtor's Brief, p. 12). (Docket 36). In any event, a Rule 9011 sanction motion must be made separately from any other motion. Fed.R.Bankr.P. 9011(c)(1)(A).

a legislature says in a statute what it means and means in a statute what it says there.' *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). A statute is to be read in a straightforward and commonsense manner. *Rogers v. Laurain (In re Laurain),* 113 F.3d 595 (6th Cir.1997). If the statutory language is clear, the court's obligation is to enforce it without further analysis. 'The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress.' *Vergos v. Gregg's Enters., Inc.,* 159 F.3d 989, 990 (6th Cir.1998). In those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters ...' the intention of its drafters, rather than the strict language controls." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

*In re Crawford,* 232 B.R. 92, 96 (Bankr. N.D.Ohio 1999).

■ Beginning with the words of the statute, it is apparent that Congress did not limit this section in the fashion proposed by Lehman. The section applies when a Chapter 13 debtor proposes to cure a default. The amount of that cure is determined by looking to two sources: (1) the existing agreement between the parties; and (2) applicable nonbankruptcy law, which in this case is Ohio law. As a result, "[t]wo conditions must be met before interest or other charges can be require[d] as part of the bankruptcy cure. First, the interest or other charges must be required under the original agreement, and second, they cannot be prohibited by state law." *In re Bumgarner,* 225 B.R. 327, 328 (Bankr.D.S.C.1998). Because there is nothing in the statute to suggest that § 1322(e) is limited to interest

charges, the Court finds that it also applies to determine whether attorney fees must be paid as part of "the amount necessary to cure" this default.

In the face of clear statutory language, it is only necessary to turn to the legislative history if this reading of § 1322(e) results in internal inconsistencies, leads to an absurd result, or is inconsistent with the intention of the drafters. Lehman has not argued that the first two scenarios exist, but does argue that the interpretation is inconsistent with the drafters' intention. That stated intention, however, is that default amounts are to be determined by state law and the parties' pre-bankruptcy agreement:

> .This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by the debtors curing defaults on their mortgages. Notwithstanding state law, this case had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision ... will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. *It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.*

140 Cong.Rec. H10,764 (daily ed. October 4, 1994) (section analysis by Congressman Brooks) (emphasis added). There is no indication in this history that Congress

intended to restrict the default amount analysis to the interest component. A finding that § 1322(e) also applies to determine whether Lehman's attorney fees are to be included in the amount necessary to cure its default is not inconsistent with the stated legislative intent.

## B. Does Ohio law permit enforcement of the attorney fee term?

As stated, there are two parts to the § 1322(e) analysis. The first, whether the agreement includes the term, has been met because the Debtor concedes that the Note and Mortgage provide for attorney fees. The second part is whether Ohio law permits enforcement of that contract term. Although Lehman contends that fees are recoverable where "as here, the underlying agreement provides for them and state law is silent," Ohio law is far from silent on this issue. (Lehman's Brief, p. 3). (Docket 39).

■■■ In analyzing questions of state law, federal courts "must apply state law in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). The Ohio Supreme Court has held that contractual stipulations for the payment of attorney fees included in notes and mortgages are invalid and unenforceable based on public policy. *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 (1911) (Syllabus)[3] (1911) ("It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void"); *Leavans v. Ohio Nat'l Bank,* 50 Ohio St. 591, 34 N.E. 1089 (Syllabus) (1893) ("A stipulation in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee ... should be included in the decree ... is against public policy and void"). The Ohio Supreme Court reaffirmed these decisions

in the case of *Worth v. Aetna Cas. & Sur. Co.,* 32 Ohio St.3d 238, 513 N.E.2d 253 (1987). There, the Court analyzed an employment contract that included an agreement to indemnify the employee for legal expenses. The Court upheld the indemnity agreement, noting that it had been arrived at "through free and understanding negotiation." *Worth,* 32 Ohio St.3d at 242–43, 513 N.E.2d at 257–58. At the same time, the Court distinguished cases involving debt instruments:

> When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.

*Id.* See *Nottingdale Homeowners' Assoc., Inc. v. Darby,* 33 Ohio St.3d 32, 514 N.E.2d 702 (1987) (enforcing a provision in condominium by-laws requiring payment of legal fees, but again pointing out that "[a] contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms, would likewise not be supportable." *Nottingdale,* 33 Ohio St.3d at 37, 514 N.E.2d at 707 n. 7).

Lehman admits, based on this case law, that "had the foreclosure proceeded to judgment, it would not be entitled to its attorney fees as part of its judgment." (Lehman Brief, p. 5). (Docket 39). Lehman argues, though, that the cases do not apply in this situation because the Debtor is exercising her contractual right to reinstate the Mortgage loan. In support of this theory, Lehman cites case law to es-

---

**3.** The syllabus of an Ohio Supreme Court decision states the law of the case. *Charles A.*

*Burton, Inc. v. Durkee,* 162 Ohio St. 433, 123 N.E.2d 432 (1954).

tablish that: (1) compromise and settlement of litigated matters is favored by Ohio courts; and (2) the Ohio Supreme Court has upheld a settlement which included a provision for the payment of attorney fees. Lehman contends that the exercise of a contractual right to reinstate a mortgage is the legal equivalent of a compromise and settlement, so that the fee provision is enforceable.

The statement that the law favors compromise is correct, but the proposed corollary that the circumstances here are the legal equivalent of a compromise and settlement is not. A settlement is a negotiated agreement ending a dispute. See Black's Law Dictionary, p. 1377 (7th ed.1999). There was no dispute that led these parties to enter into the Note and Mortgage. And the fee term at issue was not negotiated; in fact, the parties stipulated that the Note and Mortgage are preprinted form documents, which by definition are not negotiated agreements. The fee provisions in these contracts are not equivalent to a settlement.

Ohio law renders void provisions in notes and mortgages for the payment of attorney fees if the provisions were not reached through free and understanding negotiation. Under that law, Lehman cannot enforce these contract terms because they were not arrived at through such a negotiation. The attorney fees are not, then, an appropriate component of the cure amount under § 1322(e).

### CONCLUSION

The Debtor's Objection to Lehman's Second Amended Proof of Claim is sustained. A separate Order will be entered in accordance with this Memorandum of Opinion.