In re Richard L. LANDRUM, Debtor.

No. 00–12590.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Aug. 3, 2001.

Margaret A. Burks, Cincinnati, OH, trustee.

## MEMORANDUM OF DECISION

JEFFERY P. HOPKINS, Bankruptcy Judge.

The matter on for decision in this case is one of first impression in our district. It requires the Court to rule on the Debtor's objection (Doc. 12) to the claim of Homeside Lending, Inc. (Homeside), the holder of a first mortgage on the Debtor's residence. The issue presented is whether Homeside is entitled to attorney's fees as part of its claim for arrears. The Debtor argues that 11 U.S.C. § 1322(e) limits the fees that a mortgagee may recover as part of a claim for arrears to the extent, *inter alia*, such fees are prohibited by state law. The mortgagee, Homeside, contends that § 1322(e) limits only the recovery of interest on arrears. In the alternative, Homeside argues that Ohio law does not preclude the recovery of attorney's fees, pursuant to the terms of a promissory note, in the context of a mortgagor's reinstatement of a defaulted loan. Because a contractual stipulation for the payment of attorney's fees contained in a non-commercial promissory note between parties of unequal bargaining power is void under Ohio law, we hold that § 1322(e) precludes Homeside from recovering attorney's fees as part of its claim for arrears.

### I

On August 16, 1996, the Debtor executed a $73,275.00 promissory note and a mortgage to secure the same. Sometime thereafter, Homeside initiated a prepetition foreclosure action against the Debtor in the Hamilton County Court of Common Pleas. Homeside obtained a judgment and the residence was appraised at $90,000.00 for a sheriff's sale. The sale, however, did

Patrick J. Conway, Cincinnati, OH, for Debtor.

not occur as a result of the filing of this Chapter 13 case. Thereafter, Homeside filed a timely proof of claim (Claim No. 2) reflecting a principal balance of $71,405.54 and a $9,503.07 arrearage. Homeside classified the entire claim as fully secured.[1] Exhibit A to the proof of claim reflects that the arrearage includes, *inter alia*, attorney's fees for the foreclosure action and the bankruptcy case.[2]

## II

Homeside takes the position that, as an oversecured creditor, it is entitled to its attorney's fees pursuant to 11 U.S.C. § 506(b). *See In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. 520, 524 (6th Cir. BAP 1998) (§ 506(b) permits an oversecured creditor to recover its attorney's fees where they are reasonable and contemplated by contract between the parties), *aff'd*, 169 F.3d 333 (6th Cir.1999). The Debtor, however, argues that § 506(b) is trumped in this proceeding by § 1322(e) since the fees are included in a claim for arrears. Section 1322(e) provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement, and applicable non-bankruptcy law.

The Debtor contends that § 1322(e) bars the allowance of Homeside's arrearage claim for attorney's fees because Ohio law renders void the attorney's fee provision of the promissory note. Homeside advances two arguments in opposition. First,

Homeside argues that § 1322(e) precludes only the allowance of interest on an arrearage claim and that it has no application to the allowance of attorney's fees as part of such claim. Alternatively, Homeside takes the position that Ohio law does not prohibit the recovery of its fees under the circumstances before the Court.

### APPLICABILITY OF § 1322(E) TO ATTORNEY'S FEES

In *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), the United States Supreme Court held that an oversecured mortgagee is entitled to postpetition interest on arrears paid through a Chapter 13 plan. Homeside argues that § 1322(e), added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1994 shortly after the Supreme Court rendered its decision in *Rake*, serves the exclusive purpose of legislatively overruling *Rake* so as to prohibit the payment of postpetition interest on arrears unless provided by contract and allowed under state law. Therefore, Homeside concludes, § 1322(e) has no application to the collection of the attorney's fees portion of an arrearage claim. In support of this argument, Homeside refers the Court to the legislative history of § 1322(e).

Section 305. Interest on interest.

This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mort-

---

1. The Debtor, on Schedule A, valued his residence at $75,000.00. The Debtor's attorney nonetheless conceded at hearing that Homeside's claim is fully secured given the $90,000.00 sheriff's appraisal.

2. Paragraph 6(E) of the promissory note executed by the Debtor in favor of Homeside provides that Homeside is entitled to collect its costs and expenses, including attorney's fees, incurred to enforce the terms of the note.

gages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable laws prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.

H.R.Rep. No. 103–835 at 55 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3364.

Section 310

This section is in response to the recent U.S. Supreme Court decision of Rake v. Wade [508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)] (No. 92–621, decided June 7, 1993). The Court decided that an oversecured home mortgage lender has the right to receive both preconfirmation and postconfirmation interest on arrearages and other charges in order to be cured under a chapter 13 bankruptcy plan. The court further held that the home mortgage loan must also pay interest to the mortgagee on the arrearages even if the mortgage instruments are

silent on the point and such payment is not required under applicable State law. This provision would still allow the collection of interest on the arrearages; however, it dictates that the mortgage instruments contain language specifically to this end, thereby placing the mortgagor on notice. This provision is prospective in its application.

S.Rep. No. 103–168 at 53 (1993).

■■■ The Debtor, on the other hand, relies upon the decision of In re Lake, 245 B.R. 282 (Bankr.N.D.Ohio 2000). In a very thoughtful opinion by Judge Morgenstern–Clarren, the court sustained an objection by the debtor to the payment of attorney's fees under identical circumstances to the case at bar.[3] Beginning with the language of the statute, the court found "nothing ... to suggest that § 1322(e) is limited to interest charges." Lake, 245 B.R. at 285. Instead, the court concurred with the plain language construction of § 1322(e) set forth in In re Bumgarner, 225 B.R. 327 (Bankr.D.S.C. 1998):

"Two conditions must be met before interest or other charges can be require[d] as part of the bankruptcy cure. First, the interest or charges must be required under the original agreement, and second, they cannot be prohibited by state law."

Id. at 328 (quoting 8 Collier on Bankruptcy ¶ 1322.18 (15th ed. rev.1998)). Judge Morgenstern–Clarren also thoroughly analyzed the legislative history of the subsection and concluded that "[t]here is no indication in [the legislative] history that Congress

**3.** The debtor in Lake objected to the arrearage claim of Lehman Capital (Lehman), the holder of a first mortgage on the debtor's residence, to the extent that the claim included $900.00 in attorney's fees pertaining to a prepetition foreclosure action. Notwithstanding a contractual provision in the note and mortgage for the payment of Lehman's attorney's fees in the event of default, the debtor argued that § 1322(e) precluded allowance of the fees as part of the arrearage claim because the fee clauses were void under Ohio law.

intended to restrict the default amount analysis to the interest component." *Lake*, 245 B.R. at 285–86. This Court agrees with *Lake* that § 1322(e) is not limited to interest on arrears.

The Supreme Court of the United States has repeatedly stated that statutory interpretation begins with the language of the statute. *See e.g., Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The unambiguous language of § 1322(e) does not limit the statute's scope to a particular component of arrearage claims such as interest.[4] Homeside does not argue to the contrary. Instead, like the mortgagee in *Lake*, it contends that: (1) the legislative history establishes a Congressional intent to limit only interest on arrears; and (2) this alleged intent should be incorporated into the Court's construction of the statute.

Based on our reading of the legislative history, we agree with *Lake* in concluding that Congress did not intend to limit the scope of § 1322(e) to interest on arrears exclusively. It is clear that the 1994 amendment was intended to overrule *Rake v. Wade*. However, Congress did not go so far as to say that § 1322(e) was intended to accomplish this purpose alone. As a result, Homeside's argument prevails only if congressional silence as to matters beyond the scope of *Rake* manifests an intent to limit § 1322(e) exclusively to the overruling of *Rake*.[5]

The Supreme Court has long held that silence is rarely, if ever, an effective barometer of legislative intent. *Zuber v. Allen*, 396 U.S. 168, 185, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969) ("Legislative silence is a poor beacon to follow in discerning the proper statutory route."); *Girouard v. United States*, 328 U.S. 61, 69, 66 S.Ct. 826, 90 L.Ed. 1084 (1946) ("It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law."). On the other hand, "[t]he language of the statutes that Congress enacts provides 'the most reliable evidence of its intent.'" *Holloway v. United States*, 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999) (quoting *United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). *See United States v. Locke*, 471 U.S. 84, 95–96, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ("'Going behind the plain language of a statute in search of a possibly contrary congressional intent is "a step to be taken cautiously" even under the best of circumstances.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (quoting *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)). When even after taking this step nothing in the legislative history remotely suggests a congressional in-

---

**4.** In addition to *Lake* and *Bumgarner*, Judge Lundin, in his treatise on Chapter 13, has construed the plain meaning of § 1322(e) to capture more than just interest, *see* 2 Keith M. Lundin, Chapter 13 Bankruptcy § 138.1 (3rd ed. 2000) ("[I]t is probably accurate statutory interpretation that the 'notwithstanding ... section[ ] 506(b)' means that § 1322(e) controls whether and to what extent fees, costs and other charges are allowed to cure default with respect to all mortgages entered into after October 22, 1994[.]").

**5.** Homeside's argument concerning the applicability of § 1322(e) to attorney's fees boils down to the following two sentences in its brief:

> The *Lake* court said that there was no indication in the legislative history that Congress intended to restrict the default amount analysis through the interest component. *In re Lake*, [245 B.R.] at 286. However, by extrapolation, there is nothing in the legislative history that Congress intended to restrict the awardance [sic] of attorney fees.

(Doc. 20 at 2–3.)

tent contrary to Congress' chosen words ... any further steps take the courts out of the realm of interpretation and place them in the domain of legislation."). In light of the foregoing considerations of the Supreme Court, we refuse to construe congressional silence regarding attorney's fees and other arrearage charges to be indicative of an intent to limit § 1322(e) to the overruling of *Rake v. Wade.*

### MORTGAGEE'S RIGHTS TO ATTORNEY'S FEES UNDER OHIO LAW

■■■ Having concluded that § 1322(e) is applicable, the language of that Code section requires us to examine Ohio law to determine the necessary cure amount that the lender is entitled to claim.[6] "It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void." *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 at syllabus (1911).[7] As recently noted by the B.A.P. for our circuit, "[t]he rule applies specifically to mortgages." *See In re Pe-*

*troff,* No. 00–8085, slip op. at 4 (6th Cir. BAP Jul. 25, 2001); *see also Leavans v. Ohio Nat'l Bank,* 50 Ohio St. 591, 34 N.E. 1089 (1893). Homeside, by oral argument, and Liberty Savings Bank, F.S.B. ("Liberty"), by its amicus brief, argue that *Miller* is inapplicable where a mortgagor attempts to reinstate the mortgage.[8] The Court disagrees given *Miller's* use of the term "void."

To argue that *Miller* "voids" fee stipulations only when a mortgage is foreclosed creates an inherent contradiction. If a stipulation is void, it is ineffective from inception no matter what happens thereafter. *See Terrill v. Auchauer,* 14 Ohio St. 80, 85 (1862) ("[T]he distinction between the terms 'void' and 'voidable,' in their application to contracts, is often one of great practical importance; and whenever entire technical accuracy is required, the term 'void' can only be properly applied to those contracts that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.").[9]

---

6. An amicus brief addressing this issue was filed by Liberty Savings Bank, F.S.B.

7. After the Supreme Court's decision in *Nottingdale Homeowners' Ass'n, Inc. v. Darby,* 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), some courts have questioned the continuing validity of *Miller* when the stipulation arises between parties of equal bargaining power. *See New Market Acquisitions, Ltd. v. Powerhouse Gym,* 154 F.Supp.2d 1213 (S.D.Ohio 2001); *RB–3 Assocs., v. M.A. Bruder & Sons Inc.,* No. C–3–95–198, 1996 WL 1609231 (S.D.Ohio Aug.26, 1996). Moreover, the state legislature recently enacted into law Ohio Rev.Code § 1301.21, which permits creditors to enforce stipulations concerning attorney's fees contained in certain commercial debt instruments that exceed $100,000.00 at the time of execution. Although *Miller* has encountered increasing scrutiny in recent years, this Court is unaware of any case law questioning the continuing validity of *Miller* within the context of a non-commercial promissory note between parties of unequal bargaining power.

8. Liberty's amicus brief defines reinstatement as the process by which a mortgagor brings a loan current subsequent to acceleration of the debt. (*See* Doc. 23 at 2.)

9. In *Terrill,* the Ohio Supreme Court noted that courts and academics have not always carefully distinguished the term "void" from the term "voidable," often using the former where the precise definition of "void" is not intended. *See Terrill,* 14 Ohio St. at 85. The Court proceeded to adopt the following rule to determine when the term "void" should be accorded its literal meaning:

   "[I]t is said that *void* is sometimes construed *voidable,* and *where the provision is introduced for the benefit of the parties only,* such a construction may be right, but where it is introduced for public purposes, and to protect those who are incapable of protecting themselves, it should receive its full force and effect."

   *Id.* at 88 (quoting *The King v. The Inhabitants of Hipswell,* 8 B. & C. 471). Because the rule

Accordingly, this Court does not believe that *Miller's* holding can be distinguished based upon facts arising after the creation of the stipulation.

### III

For the foregoing reasons, the Debtor's objection (Doc. 12) to the claim of Homeside Lending, Inc. (Claim No. 2) will be **SUSTAINED** to the extent that the arrearage claim of Homeside Lending, Inc. will be **REDUCED** to $8,802.97 and allowed at said amount.[10]

---

in *Miller* is premised upon public policy, *see Chickerneo v. Society Nat'l Bank*, 58 Ohio St.2d 315, 320, 390 N.E.2d 1183 (1979) ("Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare."), its use of the term "void" must be accorded its precise meaning.

10. By his objection, the Debtor also took issue with $1,646.00 in foreclosure costs that Homeside included in its arrearage claim.

Following a hearing on the objection, Homeside supplemented the record with a breakdown that reflects actual foreclosure costs of $1,595.90. Because the Debtor failed to cite any authority for the proposition that foreclosure costs are prohibited under Ohio law, *see* 69 *Ohio Jur.3d Mortgages* § 374 (1986) ("A mortgagee, as a general rule, will be allowed the costs of an action to foreclose."), the Court will allow the claim for costs to the extent of $1,595.90.