**In re Jeffrey Randall ROACH, Dreama Ann Roach, Debtors.**

No. 98–55965.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Nov. 14, 2002.

Jeffrey W. Farkas, David G. Korn, Columbus, OH, for Debtors.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

*ORDER ON OBJECTION TO CLAIM*

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter came before the Court for a hearing on October 7, 2002, at 9:30 a.m. The matter came before the Court upon the Debtors' Objection to Claim No. 2 and the Response to Objection to Proof of Claim filed by Homeside Lending, Inc. f/k/a BancBoston Mortgage Corporation ("Homeside").

### I. *Statement of Jurisdiction*

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### II. *Factual Background* [1]

On April 29, 1994, Debtors executed a $54,978.00 promissory note and an open end mortgage to secure the same. (Claim No. 2, Exhibit A). Sometime thereafter, Homeside initiated a prepetition foreclosure action against Debtors in the Franklin County Court of Common Pleas. The sale was scheduled to occur on June 19, 1998. (Statement of Financial Affairs, Pleading No. 1). The sale, however, did not occur as a result of the Chapter 13 petition filing. Pursuant to the Chapter 13 Plan, the "[a]rrearage on the residential mortgage loan [was] to be paid within a reasonable period of time at 100% of the allowed claim with interest paid at the market rate or contract rate, whichever is lower, and paid pro rata with the other secured creditors." (Chapter 13 Plan, Pleading No. 4).

On November 2, 1998, Homeside filed a timely proof of claim. (Claim No. 2). The claim reflected a principal balance due of $53,660.44. The claim also reflected a prepetition arrearage of $10,293.63 made up of the following:

| | |
|---|---|
| Payments April 1997 through June 1998 | |
| 14 × $474.08 | $ 6,637.12 |
| Late charges, _____through | |
| | 274.00 |
| Property inspections | 89.20 |
| Foreclosure attorneys fees/costs | 2,393.00 [2] |
| Bankruptcy Attorney Fees | 125.00 |
| Escrow Shortage | 774.83 |
| Total | $10,293.63 |

(Claim No. 2).

On August 7, 2002, Debtors filed their Objection to claim No. 2. Within the Objec-

1. Counsel for the Debtors and Counsel for Homeside recognized at the October 7, 2002 hearing that the facts before the Court were uncontroverted.

2. The note provided that the lender was The First Choice Mortgage Corporation and that payments should be paid to the order of The Leader Mortgage Company as of April 29,

tion, Debtors recommended that Claim No. 2 be allowed for the sum of $7,775.63 and disallowed for any amount in excess. Debtors argued that Claim No. 2 included charges "for past-due mortgage payments, late charges, property inspection fees, escrow shortages, and attorneys' fees and costs associated with both foreclosure and bankruptcy services." (Objection, Pleading No. 28). Debtors further argued that "these charges as part of the mortgage arrearage claim [were] contrary to public policy" and should be deducted from Homeside's claim. (Objection, Pleading No. 28).

Homeside filed its Response on August 29, 2002. Within the Response, Homeside argued that the proof of claim was filed in November of 1998, almost four years ago. Homeside argued that at that time, "such attorneys fees were proper and allowable under then existing caselaw; as such the debtor has waived the right to object to such fees four years later." (Response, Pleading No. 29). In the alternative, Homeside argued that if the Court found that the attorneys fees were not allowable, then the court costs should be found to be allowable because "no bankruptcy court has ever disallowed incurred court costs." (Response, Pleading No. 29).

The Court set the matter for hearing on October 7, 2002, to allow the parties to present evidence and further legal arguments in support of their positions. At the hearing, the parties agreed that the facts were uncontroverted and that no additional testimony was needed. The parties also agreed that Judge Hopkins of the Southern District of Ohio had recently issued a decision concerning a claim for attorney's fees for a foreclosure action. *In re Landrum*, 267 B.R. 577 (Bankr.S.D.Ohio 2001). The parties further agreed that the BAP also had issued a decision recently concerning a claim for attorneys fees related to a mortgage foreclosure. *In re Petroff*, No. 00–8085, slip op., 47 Collier Bankr. Cas.2d 663 (6th Cir. BAP July 25, 2001). However, the parties disagreed if those decisions applied to the case at bar.

Debtors argued that those cases applied to the case at bar. Homeside argued that those cases should not apply retroactively. The Court took the matter under advisement under the condition that counsel would be given until October 21, 2002, to file statements of citations of authority in support of their arguments. Debtors filed their statement on October 8, 2002. Homeside did not file a statement. The issue that this Court must decide is if the recent cases, may be applied to the case at bar.

### III. *Legal Analysis*

In both the *Petroff* and the *Landrum* cases, the facts were similar to the facts in this case. Prior to the bankruptcy, the debtors borrowed money in order to acquire a home. In exchange the debtors gave a note and security interest in the home in the form of a mortgage. The debtors defaulted on their notes and foreclosure actions were brought in the Ohio courts. Thereafter, debtors filed their Chapter 13 cases and proposed to cure their defaults pursuant to 11 U.S.C. § 1322(a)(5). When the bank/mortgage companies filed their proofs of claim, they included attorneys fees related to the foreclosure action. The debtors then objected

---

1994. Pursuant to instructions printed on the note and dated June 10, 1994, the assistant secretary to the Leader Mortgage Company directed payments to be made to the order of BancBoston Mortgage Corporation. Further, paragraph 6(E) of the promissory note provided that the note holder was entitled to collect its costs and expenses, including reasonable attorneys fees, and expenses in enforcing the note. (Claim No. 2, Exhibit A).

to the proofs of claim on the basis that the bank/mortgage companies were not entitled to receive such attorneys fees.

 In reviewing the *Petroff* decision, the Sixth Circuit simply set forth the common law rule and public policy of the state of Ohio since 1911. Ohio law and public policy prohibit a lender from collecting attorneys fees incident to foreclosure in ordinary mortgage transactions. *See, In re Petroff.* Despite Homeside's argument that the proof of claim was filed pursuant to the case law of 1998, Homeside provided no case cites to support its position, and this Court cannot find that *Petroff* breaks with the past. Application of the Sixth Circuit case of *Petroff* to the facts before this Court is appropriate. *See, Harper v. Virginia Department of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). *See also, In re Federated Dept. Stores, Inc.,* 44 F.3d 1310, 1317 (6th Cir.1995).

### IV. *Conclusion*

Based upon the breakdown of the arrearage claim provided by Homeside, the Court finds that the proof of claim should be reduced to $8,742.13 and allowed at said amount.[3] Therefore, the Court hereby orders that Debtors' Objection to Claim No. 2 shall be SUSTAINED to the extent that the arrearage claim of Homeside Lending, Inc. f/k/a BancBoston Mortgage Corporation is reduced to $8,742.13.

IT IS SO ORDERED.

---

**3.** As in *Landrum,* the Debtor failed to cite any authority for the proposition that foreclosure costs are prohibited under state law. *In re*

*Landrum,* 267 B.R. at 582. The Court will allow those costs to the extent of $966.50.