### In re Timothy L. PLANT, Debtor.

### No. 02–40732.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 10, 2003.

David T. Noonan, Esq., Amherst, MA, for Debtor.

Andrew Harmon, Esq., Harmon Law Offices, Newton Highlands, MA, for National City Mortgage.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is an Objection to Confirmation of the Debtor's Chapter 13 Plan (the "Objection") filed by National City Mortgage Corporation ("National City"). The debtor, Timothy L. Plant (the "Debtor"), has filed a response (the "Response").

Also before the Court is National City's "Application for Compensation Under Section 506(b)" (the "Fee Application").

The issue presented is one of first impression in this district. The dispute centers on whether the Court may compel mortgagee's counsel to file a fee application conforming to Federal Rule of Bankruptcy Procedure 2016 ("FRBP 2016") and Massachusetts Bankruptcy Local Rule 2016-1 ("MBLR 2016-1") as a condition to inclusion of attorney fees and expenses in the default cure amount of a Chapter 13 plan. More specifically, the issue is whether FRBP 2016 and MBLR 2016-1 apply, notwithstanding 11 U.S.C. § 1322(e)'s dictate that interest, fees, and costs added to a default cure amount pursuant to § 1322(b)(5) be determined according to the underlying contract and nonbankruptcy law. For the reasons set forth below, the Court holds in the affirmative.

## I. FACTS AND TRAVEL OF THE CASE

On March 18, 1998, the Debtor obtained a loan from National City secured by a first priority mortgage on his residence, located in Belchertown, Massachusetts (the "Property"). Pursuant to the terms of the note (the "Note") and mortgage (the "Mortgage") executed by the Debtor, failure to timely pay the full amount of the monthly installment constitutes a default entitling National City (with exceptions not relevant here) to require immediate payment of the entire principal balance and accrued interest due under the Note. The Note also contains a provision for collection of costs and fees incurred by National City in case of default. Paragraph 7 of the Note provides that:

If [National City] has required immediate payment in full ... [National City] may require [the Debtor] to pay costs

and expenses including reasonable customary attorney fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

Paragraph 18 of the Mortgage further provides for remedies available to National City upon default:

> If [National City] requires immediate payment in full [upon default], [it] may invoke the statutory power of sale and any other remedies permitted by applicable law. [National City] shall be entitled to collect expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.

Prior to filing his Chapter 13 petition, the Debtor defaulted on the Mortgage by failing to make eight monthly payments due under the Note. National City retained the services of Harmon Law Offices, P.C. ("Harmon") to proceed with foreclosure of the Mortgage. Harmon sent relevant notices to the Debtor, successfully prosecuted an action in the Massachusetts Land Court under the Soldiers and Sailors Civil Relief Act of 1940, advertised the foreclosure sale and engaged the services of an auctioneer.[1]

Foreclosure of the Mortgage was stayed by the Debtor's petition under Chapter 13 of the Bankruptcy Code, filed on February 7, 2002. As permitted under § 1322(b)(5),[2] the Debtor proposed in his plan to pay an estimated $10,000 to cure the prepetition arrears on the Mortgage. National City filed the instant Objection, claiming the total amount of arrears to be $11,008.18.[3] Included in its arrearage computation is $2,496.76 itemized in National City's Proof of Claim as prepetition foreclosure legal fees and costs.[4] Postpetition fees and costs of $800 are also added, represented as $250 for legal fees, a $500 auction cancellation fee, and a $50.00 title update fee, for total fees and costs of $3,296.76 (the "Fees"). In light of the value of the Property and the amount of National City's claim, it is undisputed that the claim is fully secured.[5]

## II. POSITIONS OF THE PARTIES

The Debtor objects to inclusion of the Fees in the arrearage. The Debtor does not generally object to National City's entitlement to attorney fees and costs pursuant to the Note and Mortgage. However, he argues that because National City is an oversecured creditor, the Fees may only be included in the arrearage if allowed by the Court, pursuant to 11 U.S.C. § 506(b),[6]

---

1. This Court is advised that the auctioneer is an affiliate of Harmon.

2. Section 1322(b)(5) provides in relevant part:

 [The plan may] . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any secured or unsecured claim on which the last payment is due after the date on which the final payment under the plan is due.

3. National City has provided several different computations as to the actual arrears. The Court will use the amount stated in National City's latest filed Amended Proof of Claim.

4. The itemized amounts are $1,250 for prepetition legal fees and $1,246.76 for costs.

5. The Debtor's Schedules set forth the Property's value as $125,000. National City's total claim against the property is $101,270.72, according to its proof of claim. Accordingly, National City enjoys a $21,529.28 equity cushion.

6. 11 U.S.C. § 506(b) states in relevant part:

 To the extent that an allowed secured claim is secured by property the value of which, after any recovery . . . is greater than the amount of such claim, there shall be al-

FRBP 2016 and MBLR 2016–1. FRBP 2016 mandates that any entity "seeking reimbursement of necessary expenses from the estate shall file [a fee application] setting forth a detailed statement of . . . the time expended . . . ." Fed. R. Bank. P.2016. MBLR 2016–1 further requires itemization of the services performed and the time incurred, broken down by the tenth of the hour.[7]

Harmon did not keep contemporaneous time records of services rendered in National City's foreclosure of the Mortgage. Harmon states that because National City's engagement of Harmon for the foreclosure work was on a flat fee basis, no time records were kept. Harmon did, however, in response to the Debtor's Objection, submit the instant Fee Application with an "estimated" time record of services rendered in connection with the foreclosure. The Debtor objects to this estimation on the basis that, under MBLR 2016–1(a)(1), time records must reflect contemporaneously maintained time entries. The Debtor further objects to the $500 postpetition auction cancellation fee, claiming that it is unjustified because Harmon is affiliated with the auctioneer.

Harmon responds that § 506(b) is simply inapplicable in this case, at least as to the calculation of the prepetition portion of the default cure amount to be paid through the Chapter 13 plan. Instead, § 1322(e) mandates that the default cure amount must be determined solely according to the underlying contract and nonbankruptcy law. Consequently, Harmon maintains that FRBP 2016 and MBLR 2016–1 do not apply in the analysis of National City's right to reimbursement of its Fees,[8] and, although this Court has jurisdiction to review the reasonableness of the Fees, there are "several ways to show that a fee is reasonable."

Harmon further contends that the Fees are reasonable here because its retention agreement with National City provides for a flat fee payment based on guidelines set by the Department of Housing and Urban Development ("HUD"), the investor in the loan serviced by National City. Citing to the HUD's Schedule of Standard Attorney Fees for foreclosure actions, Harmon argues that the claimed prepetition amount of $2,496.76 is within the amount set by HUD guidelines.[9] In addition, Harmon

lowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

7. MBLR 2016–1 states in relevant part:
(a) Any professional seeking interim or final compensation for services rendered and reimbursement of expenses under . . . § 506(b) shall file an application for compensation and reimbursement . . . .
 (1) The application and attachments shall:
 (B) describe the specific services performed each day by each person with the time broken down into units of tenths of one hour devoted to such services.

8. Harmon does not object to FRBP 2016 and MBLR 2016–1's applicability with regard to the $800 postpetition fees and costs, presumably because § 506(b) necessarily imports ap-

plication of those rules. See Tate v. Nations-Banc Mortgage Corp., Inc. (In re Tate), 253 B.R. 653, 665 (Bankr.W.D.N.C.2000) (stating that FRBP 2016 is the method upon which bankruptcy courts rely in determining the reasonableness of compensation sought under § 506(b)). As discussed, infra, however, the distinction between prepetition and postpetition fees is irrelevant to the instant case.

9. HUD's Schedule of Standard Attorney's fees for the Commonwealth of Massachusetts are listed as $1,250 for judicial foreclosure, $750 for bankruptcy clearance, $600 for possessory action and $350 for deed-in-lieu totaling $2,950. See HUD Schedule of Standard Attorney Fees available at http://www.hud-clips.org/sub_nonhud/html/pdfforms/01–19at3.doc. Presumably, the meaning of some of those terms are better understood by Harmon and HUD than by this Court.

claims that this amount is commensurate with foreclosure fees charged by other attorneys in Massachusetts. Finally, Harmon notes that had it charged its customary rates on an hourly basis, the total fees would have been significantly higher.[10]

## III. *DISCUSSION*

### A. The Applicability of § 506(b)

■ The Court agrees with Harmon's argument to the effect that § 506(b) is inapplicable to the Court's review of the Fees in this case. When a debtor seeks to cure a prepetition payment default over the life of a Chapter 13 plan pursuant to § 1322(b)(5), the amount of the arrearage must be "determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e) (2002).[11]

The history of § 1322(e) is quite clear. Congress enacted this provision in 1994 to overrule the Supreme Court's holding in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In *Rake*, the court extended its rulings in *United States v. Ron Pair Enter., Inc.*,[12] to hold that where a Chapter 13 plan provided for an oversecured creditor's prepetition arrearage, § 506(b) required payment of postconfirmation interest on the home mortgage arrears (which itself might include preconfirmation interest) regardless of whether the underlying note, mortgage or state law permitted the accrual of such interest on interest. *Rake*, 508 U.S. at 472, 113 S.Ct. 2187.

■ By enacting § 1322(e), Congress expressly overruled the *Rake* holding, disconnecting in this respect § 506(b)'s application where a debtor cures a default through a Chapter 13 plan. Congress stated that the rule established in *Rake*

had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. [Section 1322(e) ] will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall .... It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.

H.R. Rep. 103–834 at 55 (1994) *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364. Section 1322(e) was intended to apply prospectively to contracts entered into after October 22, 1994, the effective date of the amendment. *Id.*

■ Courts have interpreted § 1322(e) to displace § 506(b)'s requirements not only as to interest on arrearages, but also to other fees and costs. *In re Landrum*, 267 B.R. 577, 580–81 (Bankr. S.D.Ohio 2001) (quoting *In re Lake*, 245 B.R. 282, 285 (Bankr.N.D.Ohio 2000) (hold-

---

**10.** In its breakdown of estimated hourly legal fees and costs, Harmon estimates the total foreclosure fees and costs to be $3,766.26.

**11.** Section 1322(e) provides that

[n]otwithstanding subsection (b)(2) of this subsection and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

**12.** In *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court read § 506(b) to mandate payment of postpetition interest on the prepetition claim of an oversecured creditor regardless of the fact that the underlying contract or state law might not provide for such interest. *See Rake*, 508 U.S. at 468, 113 S.Ct. 2187 (interpreting *Ron Pair*).

ing that Congress did not limit the provisions of § 1322(e) to interest charges but also to attorney fees and foreclosure costs)). Thus, § 1322(e) applies with respect to interest, fees and costs to every contract effective after October 22, 1994, regardless of whether a particular claim is secured or unsecured, oversecured or undersecured. *See* § 1322(b)(5) (stating that a chapter 13 plan may cure defaults of both unsecured and secured long term contracts); 2 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 138–2 (rev.3d ed. 2002) ("Section 1322(e) makes no distinction between undersecured or oversecured debts.").[13] For agreements signed after this section's effective date, as in the instant case, interest and other charges on arrearages cured through a Chapter 13 plan are allowed only if they are (1) required under the original agreement and (2) not prohibited by state law. *In re Landrum*, 267 B.R. at 580; *In re Lake*, 245 B.R. at 285.

### B. Reasonableness and the Applicability of FRBP 2016 and MBLR 2016–1

▮ None of the foregoing is particularly debatable. National City is, accordingly, entitled to recover reasonable attorney fees as provided under its Note and Mortgage and Massachusetts law. *See In re Lake*, 245 B.R. at 285. Under Massachusetts law, reasonable attorney fees may be recovered where "the contract between the parties provides for their payment, as in the case of foreclosure of mortgages or in agreements of indemnity or contracts to advance money." *Leventhal v. Krinsky*, 325 Mass. 336, 90 N.E.2d 545, 547 (1950);

*Carter v. Warren Five Cents Sav. Bank*, 409 Mass. 73, 564 N.E.2d 579, 583 (1991).

▮ The remaining question, therefore, is whether those fees are reasonable. In determining the reasonableness of attorney fees, Massachusetts courts look to several factors including the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. *Berman v. Linnane*, 434 Mass. 301, 748 N.E.2d 466, 469 (2001). "What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge." [14] *Id.*

▮ Harmon argues, however, that because § 1322(e) binds a bankruptcy court to follow the standards set forth in the underlying agreement and state law, FRBP 2016 and MBLR 2016–1 are displaced. In reaching this erroneous conclusion, Harmon overlooks the basic principle that while a federal court interpreting state law is bound to employ the substantive law of that state, matters of procedure are determined by the rules of the forum. *Servicios Comerciales Andinos, S.A. v. General Elect. Del Caribe, Inc.*, 145 F.3d 463, 479 (1st Cir.1998) (stating that where a federal court applies state law, "[i]f the matter is procedural, federal law is applied, and if substantive, the court follows the law of the forum state"); *Commonwealth v. Miller*, 15 Mass. L.Rptr. 11, 2002 WL 1489613 *3 (Mass.Super.2002) (holding

---

**13.** For contracts entered into prior to § 1322(e)'s effective date, *Rake*'s holding applies and the distinction between prepetition and postpetition fees have import. *See* Lundin, § 138–7.

**14.** Indeed, the Court can discern no material difference between the substantive standards employed by bankruptcy judges in this district in evaluating the reasonableness of attorney fees, and those employed by Massachusetts state court judges. *See In re Bank of New England*, 134 B.R. 450 (Bankr.D.Mass.1991).

that the law of the forum governs as to procedure and rules of evidence) (citing to *Baxter Nat'l Bank v. Talbot*, 154 Mass. 213, 28 N.E. 163, 164 (1891)).

▮▮▮▮ Accordingly, while National City's entitlement to attorney fees and the standards for determining the reasonableness of those fees are grounded in Massachusetts state law, the procedure employed in making that determination rests solely on federally prescribed rules of procedure. Fed. R. Bank. P. 1001 ("Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code."); *Tate v. Mortgage Corp. (In re Tate)*, 253 B.R. 653, 665 (Bankr.W.D.N.C. 2000) ("The Bankruptcy Rules govern procedure in cases under the Code."). *See also Peterson v. Boston & M.R.R.*, 310 Mass. 45, 36 N.E.2d 701, 702 (1941) (holding that while New Hampshire's standard of duty of care applied, the sufficiency of evidence supporting that standard was to be set by the procedural rules of the Massachusetts forum).

More importantly, National City's claim for reimbursement of attorney's fees implicates property of the bankruptcy estate. *See* 11 U.S.C. § 1306.[15] FRBP 2016 provides that "an entity seeking compensation or reimbursement of necessary expenses *from the estate*" must file a fee application with detailed records of time expended and expenses incurred, "even though the application is filed by a creditor." Fed. R. Bank. P.2016 (emphasis supplied).

The fees sought by National City would be paid from the Chapter 13 estate and accordingly, the requirements of FRBP 2016 apply. Fed. R. Bankr.P. 1001; 2016; *see Tate*, 253 B.R. at 665 ("[FRBP 2016] applies to any person or entity seeking compensation for services or reimbursement from estate assets."). *See also Galloway v. Long Beach Mortgage Co. (In re Galloway)*, 220 B.R. 236, 244 (Bankr. E.D.Pa.1998) (holding that in the absence of evidence beyond proof of claim asserting an amount for attorney fees to be paid as cure amount though a Chapter 13 plan, the creditor would be entitled only to the amount not disputed by the debtor); *In re NWFX, Inc.*, 267 B.R. 118, 230 (Bankr. W.D.Ark.2001) ("Each type of service should be listed with the corresponding specific time allotment so that the reasonableness of the service and value of the service to the estate may be determined."); *In re McMullen*, 273 B.R. 558, 563 n. 3 (Bankr.C.D.Ill.2001) ("[R]equests for attorney fees should be supported by ... time records ... had the debtor in this case been less conciliatory, this Court may well have [denied the creditor's claim for attorney fees].").

Further, MBLR 2016–1 is the procedure chosen by the bankruptcy judges of this District to support a judicial inquiry into the reasonableness of fee requests sought by "any professional" to be compensated from the bankruptcy estate. MBLR 2016–1. It is, therefore, an appropriate vehicle to support FRBP 2016. *See* 11 U.S.C. § 105(a) (prescribing that the Court may issue any order necessary to carry out the provisions of the Code, including "making any determination necessary or appropriate to enforce court order or rules, or to prevent an abuse of process").

---

15. 11 U.S.C. § 1306 provides:
 (a) Property of the estate includes, in addition to the property specified in section 541 of this title–
 (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted ...; and
 (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted ....

While MBLR 2016-1 does not specifically reference § 1322(e), § 105(a) provides more than sufficient support for this Court's authority to require compliance with that rule. This procedural device not only allows the Court to effectuate FRBP 2016's purpose of protecting assets of the bankruptcy estate, but also ensures that Congress' intent codified in § 1322(e) is upheld. Secured creditors may not enjoy a "court contrived windfall" at the expense of debtors or unsecured creditors by collecting unjustified attorney fees. H.R. Rep. 103-834 at 55, 1994 U.S.C.C.A.N. at 3364. *See McMullen*, 273 B.R. at 563 (prorating attorney fees charged on a flat fee basis to be included in arrearage paid through a Chapter 13 plan in absence of a fee application with specific time records justifying the total fee).[16]

■■■■ In summary, this Court holds that allowance of a creditor's attorneys fees and costs for purposes of calculating the arrearage to be cured in a Chapter 13 plan may be conditioned on the filing and allowance of a fee application conforming to FRBP 2016 and MBLR 2016-1. Note, however, the operative word "may." Where the amount sought to be applied is not challenged by the debtor, there is no reason for a creditor to incur the time and expense attendant to preparing a fee application. More importantly, there is no reason, absent challenge, for the debtor to incur this additional cost. For, where a secured creditor is compelled after specific request by the debtor to file a fee application to prove its charges, the secured creditor is entitled to add to the amount of its requested cure the expense of preparing and filing the application and appearing in defense thereof, *so long as* the amount originally sought to be charged is materially correct. The reverse is also true. Where a debtor succeeds in proving that the amount charged is materially inappropriate, the challenged charge should be disallowed *and* the cost of preparing the fee application and appearing thereon should be borne by the creditor.

C. The Instant Fee Application

■■■ Harmon's Fee Application does not meet the requirements of FRBP 2016 and MBLR 2016-1. It cannot be amended to comply, in light of Harmon's failure to maintain records of the detail necessary to meet the requirements of those rules. Yet, in analogous circumstances, this Court has been loathe to permit court appointed functionaries to lose compensation in circumstances where no case law informed their actions. In *In re Pine Valley Machine, Inc.*, 172 B.R. 481, 490 (Bankr.D.Mass.1994), this Court noted that a "retroactive application of new standards to fee applications containing services rendered prior to creation of those standards is not equitable. Requests for compensation should be judged by the

---

**16.** Frankly, this Court cannot discern a material difference between the procedural standards commonly employed by bankruptcy judges in this district with those employed by Massachusetts state judges in evaluating applications for compensation. In several cases where Massachusetts state courts have reviewed the reasonableness of attorney fees, courts have examined attorney time records to reach their conclusions. *See, e.g., IAG Federal Credit Union v. Burne,* 12 Mass.L.Rptr. 432, 2000 WL 1803634, *6 (Mass.Super.2000) (allowing attorney fees in foreclosure action as provided under the mortgage contract but requiring more specific documentation to aid the court's determination of reasonableness of fees); *Commonwealth v. Gonsalves,* 437 Mass. 1022, 773 N.E.2d 941, 943 (2002) (affirming the trial court judge's reduction of attorney fees after examination of billing records summarizing time spent on particular tasks and specifying hourly rates); *Linkage Corp. v. Trustees of Boston Univ.,* 3 Mass.L.Rptr. 537, 1995 WL 809556, *24 (Mass.Super.1995) (reducing attorney fees as duplicative after examination of time sheets submitted).

standards extant at the time that services are rendered. If [a standard] has heretofore been obscure, counsel should not have to suffer for that lack of clarity." This Court is not aware of any previous decision in this district specifically discussing the standards and procedures to be employed in evaluating a secured creditor's attorneys fees and costs in the Chapter 13 plan context. Therefore, the Court will not hold Harmon to strict compliance with MBLR 2016–1 for services rendered prior to February 15, 2003 in any case, including the case now before the Court.[17]

As for this case, this Court has sufficient knowledge of foreclosure procedures and costs to *generally* gauge the accuracy of the estimated time records submitted. *See In re Bank of New England,* 134 B.R. at 453 ("The court itself is an expert on the question (of attorney's fees) and may consider its own knowledge and experience concerning reasonable and proper fees . . . ."). Based on the proffered breakdown of the estimated time expended and the proposed fees charged in connection therewith ($1,250 prepetition; $250 postpetition), the Court finds those amounts reasonable given Harmon's level of experience and the time expended (including prosecution of a complaint under the Soldiers and Sailors Relief Act of 1940 in the Massachusetts Land Court). The Court also notes that, but for the HUD fee schedules, the total fees would have been greater. *But see In re 1095 Commonwealth Ave. Corp.,* 204 B.R. 284, 290 (Bankr.D.Mass.1997) ("Where [a mortgagee] agree[s] to employ [a law firm] at a negotiated rate that [is] less than the firm's standard hourly rates, the actual negotiated rate displaces the standard rate and becomes the presumptive reasonable rate.").

The prepetition costs sought to be reimbursed are itemized as follows:

| | |
|---|---|
| Municipal Lien Certificate | $ 25.00 |
| Filing Fee (Land Court Complaint) | $ 110.00 |
| Title | $ 240.00 |
| Recording Fee | $ 30.00 |
| Publication Costs (Order of Notice) | $ 54.74 |
| Sheriff (service of Order of Notice) | $ 33.76 |
| Title update | $ 50.00 |
| Publication Costs (Order of Sale) | $ 422.28 |
| Certified Mail Costs | $ 29.92 |
| Title Update | $ 50.00 |
| Auctioneers Fee (Postponement) | $ 201.06 |
| | $1,246.76 |

In addition, National City also includes a postpetition auction cancellation fee of $500.00 and an additional title update fee of $50.00.

 The Court finds that the aforesaid costs are reasonable and customary and should be allowed, with the exception of the postpetition cancellation fee of $500. This charge is not a "cost." While it is true that National City would bear a similar cost if the proposed auction were conducted by a third party auctioneer, and, in that event, might be reasonable, in this case the auctioneer was associated with National City's attorneys. The cancellation should therefore be documented as a service and not as a cost. Notably, Harmon has in no respect demonstrated what, if any, services were rendered to justify that cancellation fee.

In light of the foregoing, the attorney fees requested by National City in the amount of $1,250.00 and $250.00 are allowed. National City is also allowed its costs of $1,296.76 ($1,246.76 plus the additional postpetition title update of $50.00). The postpetition purported "cancellation fee" of $500 is disallowed. Accordingly, the total fees and costs to be included as part of the default cure amount in the Debtor's Chapter 13 plan pursuant to § 1322(b)(5) is $2,796.76.

---

**17.** Similarly, National City shall not add its additional costs for preparing the Fee Application and prosecuting same to the cure amount to be included in the Chapter 13 Plan.

## IV. *CONCLUSION*

For the foregoing reasons, the Court SUSTAINS National City's Objection in part and OVERRULES it in part, consistent with its filings and ruling set forth above. In light of ambiguity in the parties' submissions with respect to the principal and interest components of the arrearage on the date of case commencement, the Court will reschedule a hearing on the Objection in order to make a final determination as to the amount of cure to be set forth in the Debtor's Plan.