**In re Amy J. SHAFFER, Debtor.**

No. 01–10579.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 27, 2002.

Michael W. Warren, Portsmouth, OH, for Debtor.

Margaret A. Burks, Cincinnati, OH, trustee.

**MEMORANDUM OF DECISION ON CREDITOR'S REQUEST FOR AT-TORNEY'S FEES RELATED TO MOTION FOR RELIEF FROM STAY**

JEFFERY P. HOPKINS, Bankruptcy Judge.

Altegra Credit Company ("Altegra"), on August 20, 2001, filed a motion seeking

relief from the automatic stay ("Motion") (Doc. 28) to foreclose against the residence of the Debtor–Amy J. Shaffer ("Shaffer").[1] The parties reached an agreement, partially resolving the Motion, whereby Shaffer will be permitted to retain possession of the residence in exchange for payment of an alleged postpetition arrearage. The sole issue remaining for decision concerns whether Altegra should be allowed to pass costs for attorney's fees incurred in connection with prosecuting the Motion through to the Debtor. Because there is no statute and no enforceable contractual provision authorizing such an award, the Court holds that Altegra cannot.

### FACTS

Shaffer filed a Chapter 13 petition on February 2, 2001. Shaffer's mortgage company, Altegra, filed a proof of claim on April 16, 2001, setting forth a $2,772.24 arrearage claim. Attached to the proof of claim is a copy of a $69,592.10 promissory note and a mortgage securing the same. Both of these instruments contain standard language attempting to obligate the Debtor to pay the mortgagee's costs in connection with any suit to collect the debt. Shaffer's Chapter 13 plan, confirmed on June 27, 2001, obligates her to: (1) maintain monthly mortgage payments outside the plan; and (2) cure a $2,672.04 prepetition arrearage on the mortgage through monthly plan payments of $110.00. By its Motion, Altegra seeks relief based on Shaffer's alleged failure to make her postpetition mortgage payments.

### LAW & ANALYSIS

Federal courts, in a break with the English rule, have long recognized the general principle that each party bears responsibility for its own attorney's fees unless authorized by applicable statute or an enforceable contract. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 636 (6th Cir.2000). To determine whether Altegra is entitled to payment of its attorney's fees in this proceeding requires an analysis of the statutory and contractual bases upon which the claim is predicated.

1. Statutory Basis

Altegra argues that it is entitled to recover its attorney's fees pursuant to 11 U.S.C. § 506(b).[2] Altegra's pleadings fail to state whether its fees were incurred before or after confirmation of the Debtor's plan. Either way, the result is the same. Section 506(b) cannot serve as a basis for Altegra's recovery of attorney's fees.

A. Postconfirmation Fees

Plainly, under *Alyeska* and *Mencer*, Altegra has the burden of demonstrating that it would be proper to shift payment of attorney's fees for postconfirmation services to the Debtor. Altegra's reliance

---

1. The Motion, captioned as "Motion to Set Hearing Date on Motion for Relief From Stay," requests a rescheduled hearing on a motion for relief from stay (Doc. 14) filed by Altegra on May 31, 2001. The May 31, 2001 motion, however, was denied for failure to prosecute by this Court's order (Doc. 25) entered on August 13, 2001. Accordingly, the Court will treat the August 20, 2001 Motion as a motion for relief from stay.

2. Section 506(b) provides in material part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

upon § 506(b) as a mechanism in support of this general proposition is misplaced. Within the context of Chapter 13, the award of postpetition interest under § 506(b) is limited to postpetition interest that accrues prior to plan confirmation or the effective date of the plan. *See Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).[3] Because § 506(b) is indistinguishable in its treatment of postpetition interest and postpetition attorney's fees, courts have consistently held that the recovery of attorney's fees under § 506(b) in a reorganization case is similarly limited to *postpetition, preconfirmation* attorney's fees. *See Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333 (11th Cir.2000) (§ 506(b) deemed inapplicable to mortgagee's postconfirmation attorney's fees in Chapter 13 case), *cert. denied,* 531 U.S. 1073, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001), *reh'g denied,* 531 U.S. 1185, 121 S.Ct. 1173, 148 L.Ed.2d 1030 (2001); *In re Lichty,* 251 B.R. 76 (Bankr. D.Neb.2000) (creditor in Chapter 12 case not entitled to collect postconfirmation attorney's fees under § 506(b)); *see also* 4 Keith M. Lundin, Chapter 13 Bankruptcy § 304.1 (3rd ed.2000) ("It should be noted that § 506(b) only applies to allow the addition of postpetition attorneys' fees to a creditor's oversecured claim until confirmation."). We find this authority persuasive and will follow the cases cited herein.

## B. Preconfirmation Fees

■ Likewise, § 506(b) does not serve as a statutory basis for Altegra to add preconfirmation attorney's fees to its arrearage claim. Generally, an oversecured creditor's preconfirmation fees are recoverable under § 506(b), notwithstanding state law to the contrary, so long as the fees are reasonable and contemplated by the parties' agreements. *See In re Campbell,* 138 B.R. 184, 186–87 (Bankr. S.D.Ohio 1991) (Calhoun, J.); *In re Bristol,* 92 B.R. 276, 277–78 (Bankr.S.D.Ohio 1988) (Sellers, J.). However, when the preconfirmation attorney's fees are to be added to an arrearage claim, the general rule that state law does not apply has been superseded by Congress's 1994 enactment of 11 U.S.C. § 1322(e)[4]. *See In re Landrum,* 267 B.R. 577, 579–82 (Bankr. S.D.Ohio 2001) (Hopkins, J.); *In re Lake,* 245 B.R. 282, 285–86 (Bankr.N.D.Ohio 2000). Ohio law, made applicable in this context pursuant to § 1322(e), renders fee stipulations void as a matter of public policy.

■■ "It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void." *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 at syllabus (1911).[5] Stipulations

---

**3.** *Rake* has been superseded on other grounds by the codification of 11 U.S.C. § 1322(e).

**4.** Section 1322(e) provides:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

**5.** After the Supreme Court's decision in *Nottingdale Homeowners' Ass'n, Inc. v. Darby,* 33

Ohio St.3d 32, 514 N.E.2d 702 (1987), some courts have questioned the continuing validity of *Miller* when the stipulation arises between parties of equal bargaining power. *See New Market Acquisitions, Ltd. v. Powerhouse Gym,* 154 F.Supp.2d 1213 (S.D.Ohio 2001); *RB–3 Assocs. v. M.A. Bruder & Sons Inc.,* No. C–3–95–198, 1996 WL 1609231 (S.D.Ohio Aug.26, 1996). Moreover, the state legislature recently enacted into law Ohio Rev.Code § 1301.21, which permits creditors to enforce stipulations concerning attorney's fees contained in certain commercial debt instruments that exceed $100,000.00 at the time of execution.

in mortgages are also included within Ohio's broad public policy proscription against the recovery of attorney's fees. *See Leavans v. Ohio Nat'l Bank*, 50 Ohio St. 591, 34 N.E. 1089 (1893). Because Altegra's fee stipulations are unenforceable under Ohio law, § 1322(e) precludes the addition of Altegra's preconfirmation attorney's fees to its arrearage claim pursuant to § 506(b). *See Landrum*, 267 B.R. at 577; *Lake*, 245 B.R. at 282.[6]

### 2. Contractual Basis

Having determined that a stipulation for attorney's fees is absolutely void under Ohio law as against public policy, Altegra cannot in this bankruptcy proceeding seek to enforce that same contractual provision.

### CONCLUSION

Altegra's Motion will be denied because recovery of its attorney's fees is not authorized by statute nor enforceable under the contract with Shaffer.· An order to this effect will be entered.

---

Although *Miller* has encountered increasing scrutiny in recent years, this Court is unaware of any case law questioning the continuing validity of *Miller* within the context of a debt instrument between parties of unequal bargaining power that does not exceed $100,000.00.

6. Altegra cites a number of decisions in support of the proposition that a creditor, pursuant to § 506(b), can recover from the estate its attorney's fees related to a motion for relief from stay. (*See* Doc. 33 at 3.) With one exception, being *In re Williams*, 174 B.R. 307 (Bankr.D.Kan.1994), all of the cited decisions were rendered prior to *Rake* and the 1994 codification of § 1322(e). To the extent that any of these decisions award postconfirmation attorney's fees under § 506(b), they have been effectively overruled by *Rake*. To the extent that these decisions award preconfirmation attorney's fees as part of an arrearage claim, these cases are distinguishable from the instant case because the issue arose prior to the effective date of § 1322(e). *Williams*, a Chapter 12 case, is unclear as to whether the fees in question were incurred before or after plan confirmation. To the extent that postconfirmation fees may have been awarded under § 506(b), *Williams* conflicts with *Rake*. To the extent that preconfirmation fees may have been awarded as part of an arrearage claim, § 1222(d) (the Chapter 12 equivalent of § 1322(e)) would not have applied because § 1222(d) and § 1322(e) apply only to agreements entered into after October 22, 1994. *See* 8 Collier on Bankr.¶¶ 1222.06, 1322.09[4][b] (15th ed. rev.2001). It is clear from the text of *Williams* that the security agreement in question was executed prior to October 22, 1994.