Sherrall R. DAVIDSON, Plaintiff,

v.

WELTMAN, WEINBERG & REIS, Defendant.

No. C–3–02–226.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 12, 2003.

Andrew M. Engel, Kettering, OH, for Plaintiff.

Luke L. Dauchot, Kirkland & Ellis, Chicago, IL, Christine M. Haaker, Thompson Hine–3, Dayton, OH, Daniel M. Haymond, Thompson Hine & Flory, Cleveland, OH, for Defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR LEAVE TO PERFECT SERVICE OF PROCESS OUT OF TIME (DOC. # 13); DEFENDANT'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(5) (PORTION OF DOC. # 9), IS OVERRULED; DEFENDANT'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6) (PORTION OF DOC. # 9), IS SUSTAINED; PLAINTIFF IS GRANTED LEAVE TO FILE, WITHIN TWENTY (20) DAYS FROM DATE, AN AMENDED COMPLAINT, CONSISTENT WITH THIS DECISION AND SUBJECT TO THE STRICTURES OF FED. R. CIV. P. 11; SHOULD PLAINTIFF ELECT NOT TO FILE AN AMENDED COMPLAINT WITHIN SAID TIME PERIOD, THE CAPTIONED CAUSE WILL BE DISMISSED WITH PREJUDICE

RICE, Chief Judge.

Plaintiff Sherrall R. Davidson ("Davidson") has brought this putative class action, alleging that Defendant Weltman, Weinberg & Reis ("WW & R") has violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a et seq., and Ohio law by attempting to collect attorney's fees from her relating to her foreclosure, as a condition of the reinstatement of her mortgage. On May 4, 1999, Plaintiff borrowed $57,800 from the Equicredit Corporation of Ohio by signing a note.[1] The note was secured by a mortgage on Davidson's residential real estate. Paragraph 6(F) of the note provides: "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and ex-

penses in enforcing this Note to the extent not prohibited by applicable law." (Compl.Ex.A, ¶ 6(F)). Davidson subsequently defaulted on her loan, and Equicredit initiated foreclosure proceedings.

Paragraph 18 of Plaintiff's mortgage provides that she (the borrower) has the right to have enforcement of the mortgage discontinued and to reinstate her mortgage if she (1) pays the lender all sums which would be due under the mortgage, (2) cures any default of any other covenants or agreements, (3) pays all expenses incurred in enforcing the mortgage, to the extent not prohibited by law, and (4) takes such action as the lender may reasonably require to assure that the lien of the mortgage, the lender's rights in the property, and the borrower's obligation to pay remain fully effective as if no acceleration had occurred (Doc. # 1, Ex. B ¶ 18). On May 21, 2001, WW & R sent Davidson correspondence demanding that she pay costs in the amount of $1,400 and attorney's fees in the amount of $5,879.57, as conditions for the reinstatement of her mortgage. Plaintiff asserts that this demand for attorney's fees is prohibited by Ohio law. Consequently, on May 15, 2002, Plaintiff brought suit in this Court, setting forth four claims for relief, to wit: (1) a claim for violations of the FDCPA, (2) a state law claim for intentional misrepresentation; (3) a state law claim for unjust enrichment; and (4) a claim for punitive damages.

Pending before the Court is Defendant's Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(5) and 12(b)(6) (Doc. # 9). Also pending is Plaintiff's Motion for Leave to Perfect Service of Process Out of Time (Doc. # 13). As a means of analysis, the Court will first address Plaintiff's Mo-

---

**1.** The following facts are taken from Plaintiff's Complaint, including the attached exhibits

(Doc. # 1).

tion and Defendant's corresponding Rule 12(b)(5) Motion. The Court will then turn to Defendant's Rule 12(b)(6) Motion to Dismiss. For the reasons assigned, Plaintiff's Motion is SUSTAINED, and Defendant's corresponding Rule 12(b)(5) Motion is OVERRULED. Defendant's Rule 12(b)(6) Motion is SUSTAINED.

I. *Defendant's Motion to Dismiss, Pursuant to Fed.R.Civ.P. 12(b)(5), for Failure to Perfect Service of Process in a Timely Fashion (Portion of Doc. # 9); Plaintiff's Motion for Leave to Perfect Service of Process Out of Time (Doc. # 13)*

In its Motion, WW & R asserts that the service of the summons and the Complaint violated Rule 4(m) of the Federal Rules of Civil Procedure, because Plaintiff did not effect service until more than 120 days after the Complaint was filed. WW & R argues that Plaintiff did not attempt to effect service by September 12, 2002, the deadline for service of process, and that she cannot demonstrate good cause for that failure. Defendant further asserts that the Court should not exercise its discretion to grant Plaintiff an extension to perfect service, because (1) Defendant had no notice of the lawsuit prior to being served on September 19, 2002; (2) Plaintiff's counsel has demonstrated a disregard for the Federal Rules in this class action lawsuit; and (3) the merits of the underlying case do not justify an extension of time. Plaintiff has responded by filing a Motion for Leave to Effect Service of Process Out of Time (Doc. # 13). She indicates that the service was not effected in a timely manner due to an error by the Clerk's Office. Both parties acknowledge that WW & R received service of process on September 19, 2002, seven days after the deadline.

In relevant part, Rule 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). The first clause of this Rule indicates that a district court shall either (1) dismiss a complaint without prejudice, *or* (2) direct that service be effected within a specified time, if a plaintiff fails to serve a summons and complaint within 120 days after filing the complaint. The second clause of Rule 4(m) states that a district court *shall* extend the time for service, however, if a plaintiff demonstrates good cause for failing to comply with the 120–day time requirement. A plain reading of the first clause reveals that a district court, in the absence of good cause, generally possesses the discretion to dismiss a complaint or to allow service to be perfected within a specified time whenever a plaintiff fails to perfect service within 120 days after filing a complaint. The second clause then removes a district court's discretion if a plaintiff establishes good cause for his failure to comply with the 120–day time limit. Upon a showing of good cause for non-compliance, a district court *shall* extend the time for service. *See* Advisory Committee Notes on Fed. R.Civ.P. 4(m) (emphasis added); *Henderson v. United States,* 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("Most recently, in [the] 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120–day period 'even if there is no good cause shown.' "); *Stewart v. Tennessee Valley Authority,* 238 F.3d 424, 2000 WL 1785749 (6th Cir. 2000).

■ In the instant case, Plaintiff has demonstrated good cause in the form of undisputed evidence that the failure to perfect service in a timely manner was due to an error on the part of the Clerk's Office. In particular, Mr. Engel, counsel for Plaintiff, states in his affidavit that prior to the deadline for service of process, he instructed his secretary to prepare a summons in this matter for service upon Defendant and to deliver the summons and complaint to the Clerk's Office for processing (Engel Aff. ¶ 2). He further indicates that he received a telephone call from the Clerk's Office on September 16, 2002, indicating that it had received the certified mail return receipt card back from the Post Office, but it had failed to keep a copy of the summons (*id.* ¶ 3). Consequently, the summons and complaint would be reissued (*id.* ¶¶ 3–4).

As acknowledged by WW & R, Defendant received service of process on September 19, 2002, one week after the deadline set forth in Rule 4(m). In light of the undisputed evidence by Plaintiff that her counsel provided the summons and complaint to the Clerk's Office prior to the deadline for service of process and that an error by the Clerk's Office delayed timely service, the Court sees no reason why Plaintiff should be penalized for an error over which she had no control. Thus, the Court sees no reason why Plaintiff should not be permitted to perfect service out of time. Accordingly, Plaintiff's Motion for Leave to Perfect Service Out of Time (Doc. # 13) is SUSTAINED. Defendant's Motion to Dismiss, pursuant to Rule 12(b)(5) (Doc. # 9), is OVERRULED.

II. *Defendant's Motion to Dismiss, Pursuant to Fed.R.Civ.P. 12(b)(6) (Portion of Doc. # 9)*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998)("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In its Motion, Defendant seeks dismissal of Plaintiff's claims on the grounds that (1) Ohio law does not prohibit contractual provisions for the payment of attorney's fees as a condition of reinstatement; (2) Plaintiff's claims are barred by equitable estoppel; (3) Plaintiff's claim for intentional misrepresentation must fail if Defendant made no misrepresentation; (4) Plaintiff failed to state a claim for unjust enrichment; and (5) Plaintiff failed to state a claim for punitive damages. Defendant's arguments will be addressed in turn.

A. *Does Ohio Law Prohibit Contractual Provisions for the Payment of Attorney's Fees as a Condition of Reinstatement?*

At the heart of this litigation is the question of whether Ohio law allows for contractual provisions for the payment of attorney's fees as a condition of the reinstatement of a mortgage.[2] All of Plaintiff's claims flow from a resolution of that issue. In support of her argument that Ohio law prohibits Defendant from attempting to recover attorney's fees as part of the reinstatement of her mortgage, Plaintiff relies upon *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (1911), wherein the Ohio Supreme Court held in ¶ 1 of the syllabus:

> It is settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void.

In *Worth v. Aetna Cas. & Surety Co.*, 32 Ohio St.3d 238, 513 N.E.2d 253 (1987), the Ohio Supreme Court upheld *Miller*, but found it inapplicable to an indemnification agreement, which was arrived at through "free and understanding negotiation." *Id.* at 257–28. In *Nottingdale Homeowners' Ass'n v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), the Ohio Supreme Court further distinguished *Miller*. In *Nottingdale*, the court held that a provision in the by-laws of a condominium association which required an owner, who had defaulted on his obligation to pay common assessments, to pay the association's attor-

ney's fees was not void as against public policy. The *Nottingdale* court reasoned that the State of Ohio follows the "American Rule" regarding the recovery of attorney's fees by the prevailing party in a civil action, and that individuals have a fundamental right to contract without government restraint. Without overruling *Miller*, the *Nottingdale* court concluded that its prior decision was inapposite, stating:

> Although *Miller, supra*, does involve a stipulation to pay attorney fees, the case more specifically deals with a commercial transaction and a promissory note containing an attorney fee stipulation. Thus, *Miller* is factually a far cry from the case now before us which involves a specific contractual provision that was assented to in a non-commercial setting by competent parties with equal bargaining positions and under neither compulsion nor duress.

514 N.E.2d at 705.

Since *Nottingdale*, several Ohio appellate courts have concluded that the freedom of contract rationale employed in that case compels the conclusion that its holding extends to other types of contracts. *See, e.g., Goldfarb v. The Robb Report, Inc.*, 101 Ohio App.3d 134, 655 N.E.2d 211 (1995) (commercial franchise agreement); *Hilb, Rogal & Hamilton Agency v. Reynolds*, 81 Ohio App.3d 330, 610 N.E.2d 1102 (1992) (employment contract). Indeed, this Court has held that provisions in various types of agreements, under which one party is required to pay the attorney's fees of the other, are enforceable under the law

**2.** Although the mortgage and the note do not clearly specify that they will be governed by Ohio law, both parties assert that Ohio law applies. When the parties have failed to specify which state's substantive law should govern a contract, the court should determine which state has "the most significant relationship to the transaction and the parties." *Medical Mut. of Ohio v. deSoto*, 245 F.3d 561

(6th Cir.2001); *see Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St.3d 474, 477, 747 N.E.2d 206 (Ohio 2001). Both Plaintiff and EquiCredit are located in Ohio, and the note and mortgage were created in this State regarding real property located in this State. Accordingly, the Court agrees that the instruments are governed by Ohio law.

of Ohio. *See RB–3 Associates v. M.A. Bruder & Sons, Inc.,* 1996 WL 1609231 (S.D.Ohio 1996) (Rice, J.) (commercial lease); *Cook v. VFS, Inc.,* Case No. C–3–96–191 (S.D.Ohio Mar.9, 1998) (Rice, J.) (credit card agreement). Nevertheless, Plaintiffs points out that *Miller* has not been overruled and argues that Ohio appellate courts have refused to enforce a provision requiring one party to pay the other party's attorney's fees when it was included in a debt instrument, such as a note or mortgage.

This Court agrees with Plaintiff that some Ohio appellate courts have refused to enforce such a provision in a note or mortgage, noting that *Miller* held that a provision contained in a note, requiring one party to pay the other's attorney's fees, was void as against public policy. *See Sabin v. Ansorge,* 2000 WL 1774141 (Ohio App. 11th Dist.2000) (provision requiring debtor to pay attorney's fees incurred in enforcing the note was unenforceable); *Liberty Savings Bank v. Sortman,* 1998 WL 184483 (Ohio App. 2 Dist.1998) (disallowing, in accordance with *Miller,* an attorney's fees provision in a mortgage when the fees were sought by mortgagor during a foreclosure proceeding); *see also In re Petroff,* 2001 WL 34041797 (6th Cir.BAP July 25, 2001). In addition, as cited by Plaintiff, several bankruptcy courts in this State recently have denied claims for attorney's fees in the context of reinstatement, based on the holding in *Miller.* *In re Lake,* 245 B.R. 282 (Bankr.N.D.Ohio 2000); *In re Landrum,* 267 B.R. 577 (Bkrtcy.S.D.Ohio 2001). In *In re Landrum,* the bankruptcy court refused to distinguish situations where attorney's fees are sought upon foreclosure and when they are sought as part of reinstatement. It reasoned:

> To argue that *Miller* "voids" fee stipulations only when a mortgage is foreclosed creates an inherent contradiction. If a stipulation is void, it is ineffective from inception no matter what happens thereafter. *See Terrill v. Auchauer,* 14 Ohio St. 80, 85 (1862) ("[T]he distinction between the terms 'void' and 'voidable,' in their application to contracts, is often one of great practical importance; and whenever entire technical accuracy is required, the term 'void' can only be properly applied to those contracts that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification."). Accordingly, this Court does not believe that *Miller's* holding can be distinguished based upon facts arising after the creation of the stipulation.

267 B.R. at 582–83 (footnote omitted). The court acknowledged that "void" is sometimes used when "voidable" is intended; however, it concluded that because *Miller's* holding was premised on public policy, the used of the term "void" must be accorded its precise meaning. *Id.* at 582, n. 9.

In *In re Lake,* the bankruptcy court likewise refused to enforce the contractual provision for the payment of attorney's fees as a condition of reinstatement. The court based its decision on the ground that the provision was not the product of "free and understanding" negotiation between the debtor and the mortgagee.

The Ohio Supreme Court has held that contractual stipulations for the payment of attorney fees included in notes and mortgages are invalid and unenforceable based on public policy. *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 (1911) (Syllabus) (1911) ("It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void"); *Leavans v. Ohio Nat'l Bank,* 50 Ohio St. 591, 34 N.E. 1089 (1893) ("A stipulation

in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee ... should be included in the decree ... is against public policy and void"). The Ohio Supreme Court reaffirmed these decisions in the case of *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 513 N.E.2d 253 (1987). There, the Court analyzed an employment contract that included an agreement to indemnify the employee for legal expenses. The Court upheld the indemnity agreement, noting that it had been arrived at "through free and understanding negotiation." *Worth*, 32 Ohio St.3d at 242–43, 513 N.E.2d at 257–58. At the same time, the Court distinguished cases involving debt instruments:

> When a stipulation to pay attorney fees is incorporated into an ordinary contract, lease, note or other debt instrument, it is ordinarily included by the creditor or a similar party to whom the debt is owed and is in the sole interest of such party. In the event of a breach or other default on the underlying obligation, the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. In those circumstances, the promise to pay counsel fees is not arrived at through free and understanding negotiation.

*Id.; See Nottingdale Homeowners' Assoc., Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987) (enforcing a provision in condominium by-laws requiring payment of legal fees, but again pointing out that "[a] contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms, would likewise not be supportable." *Nottingdale*, 33 Ohio St.3d at 37, 514 N.E.2d at 707 n. 7).

Lehman admits, based on this case law, that "had the foreclosure proceeded to judgment, it would not be entitled to its attorney fees as part of its judgment." (Lehman Brief, p. 5). (Docket 39). Lehman argues, though, that the cases do not apply in this situation because the Debtor is exercising her contractual right to reinstate the Mortgage loan. In support of this theory, Lehman cites case law to establish that: (1) compromise and settlement of litigated matters is favored by Ohio courts; and (2) the Ohio Supreme Court has upheld a settlement which included a provision for the payment of attorney fees. Lehman contends that the exercise of a contractual right to reinstate a mortgage is the legal equivalent of a compromise and settlement, so that the fee provision is enforceable.

The statement that the law favors compromise is correct, but the proposed corollary that the circumstances here are the legal equivalent of a compromise and settlement is not. A settlement is a negotiated agreement ending a dispute. See Black's Law Dictionary, p. 1377 (7th ed.1999). There was no dispute that led these parties to enter into the Note and Mortgage. And the fee term at issue was not negotiated; in fact, the parties stipulated that the Note and Mortgage are pre-printed form documents, which by definition are not negotiated agreements. The fee provisions in these contracts are not equivalent to a settlement.

Ohio law renders void provisions in notes and mortgages for the payment of attorney fees if the provisions were not reached through free and understanding negotiation. Under that law, Lehman cannot enforce these contract terms because they were not arrived at through such a negotiation....

245 B.R. at 286–87. Based on these cases, Plaintiff asserts that, since *Nottingdale,* Ohio law continues to preclude attorney's fees provisions in debt instruments, including those in the context of reinstatement of a mortgage.

In its Motion, Defendant asserts that *Miller* must be put into context, that the foregoing cases (and others which have reached the same conclusion that attorney's fees are not permitted in the context of reinstatement) have misapplied *Miller,* and that Plaintiff's cases should not be persuasive. WW & R begins with *State for Use of Fund Com'rs of Muskingum County v. Taylor,* 10 Ohio 378 (1841), in which the Ohio Supreme Court held that a stipulation to pay a fixed percentage of the loan as collection fees, in addition to the legal interest for money loaned, is against public policy and void. Defendant emphasizes that the case involved a fixed fee, which potentially allowed a lender to reap a profit from the default of the debtor.

Defendant argues that *Miller* must also be read in light of *Busby v. Finn,* 1 Ohio St. 409 (1853), in which an individual borrowed money from a bank and secured the transaction with two mortgages. Several individuals were sureties. One mortgage provided that the debtor "should pay all costs and charges of what nature soever to which the bank might be subjected in collecting said debts." *Id.* at 416. After defaulting on the note, he confessed judgment for the amount due on the note and for attorney's fees, in an amount agreed upon by the debtor and the attorney. The Supreme Court of Ohio rejected the sureties challenge to the inclusion of the attorney's fees, stating that the debtor had agreed to pay the fees, had confessed a judgment including them, and had ultimately paid the fees. The court further reasoned that "as there was nothing immoral or wrong in the payment, as they had been well earned by [the attorney], as no part of them was reserved by the bank, and as the transaction was not a shift to obtain illegal interest, we see no right of the [sureties] to complain." *Id.* at 421. Against the background of *Taylor* and *Busby,* WW & R argues that *Miller* must be read to allow stipulations to pay attorney's fees when they do not shift a profit to the lender in violation of usury laws but, rather, merely reimburse the attorney for actual expenses.

The Court disagrees with WW & R that *Miller* is as narrowly tailored as Defendant implies. In *Busby,* it must be emphasized that the court was addressing arguments by the sureties based on the judgment against them as sureties; the judgment against the debtor, in which he had confessed judgment for the attorney's fees, remained in force and could not be attacked collaterally. In addition, although the *Miller* court relied upon *Shelton v. Gill,* 11 Ohio 417 (1842), in which a fixed collection fee was invalidated, it also cited to *Leavans v. Bank,* 50 Ohio St. 591, 34 N.E. 1089 (1893), in which the Ohio Supreme Court held:

> A stipulation in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee, to be fixed by the court, for the services of the plaintiff's attorney in the foreclosure action, should be included in the decree, and paid out of the proceeds arising from the sale of mortgaged property, is against public policy and void.

*Id.* (syllabus). Thus, the foundation of *Miller* was not limited to fixed fee cases, in which the debtor could be assured a profit from the foreclosure. It also relied upon precedent which had invalidated an attorney's fee provision where the attorney would receive only that which he had reasonably earned. Thus, *Miller* must be read to preclude any stipulation in a note for attorney's fees upon the default of the

debtor, regardless of whether the fees were fixed by the contract.

Although the Court disagrees with Defendant's interpretation of *Miller*, it agrees that several courts, since *Nottingdale,* have enforced attorney's fee provisions in both commercial and non-commercial contexts. In *RB–3 Assoc. v. M.A. Bruder & Sons, Inc.,* 1996 WL 1609231 (S.D.Ohio Aug. 26, 1996) (Rice, J.), this Court addressed whether a provision in a commercial lease which provided for the payment of attorney fees by the Defendant in the event of default was enforceable. The Court recognized that "the continuing vitality of *Miller* is uncertain," in light of *Nottingdale,* and it rejected the contention that the distinction between commercial and non-commercial transactions was the decisive distinguishing factor between *Miller* and *Nottingdale,* "given that parties to a commercial transaction are more rather than less likely to have equal bargaining power than are parties to a non-commercial transaction." *Id.* at *4. Instead, this Court found that a more obvious and persuasive distinction rested upon the Ohio Supreme Court's emphasis in *Nottingdale* on the importance of equal bargaining power in determining whether contract provisions should be enforced. *Id.* at *5. Thus, this Court reasoned that "absent either statutory authority to the contrary *or* the existence of manifestly unequal bargaining power, which is a question of fact, the principle of freedom of contract supports the enforceability of attorney fees provisions." *Id.* Therefore, this Court concluded:

> [T]his Court will interpret *Nottingdale* as standing for the proposition that, although the important principle of freedom of contract generally weighs in favor of enforcing provisions which provide for the payment of attorneys fees, public policy requires that such provisions be unenforceable where there is a lack of equal bargaining

power. Accordingly, attorney fees provisions in *commercial* transactions, which are negotiated in a fair manner by parties with equal bargaining power, are enforceable under Ohio law.

*Id.* at *7. Upon noting that the parties possessed equal bargaining power, the Court found the attorney's fee provision enforceable. *Id.; see New Market Acquisitions, Ltd. v. Powerhouse Gym,* 154 F.Supp.2d 1213 (S.D.Ohio 2001) (Holschuh, J.) (enforcing an attorney's fee provision in a guaranty agreement due to equal bargaining power of the parties, based on the reasoning in *RB–3 Associates* ); *Gaul v. Olympia Fitness Center, Inc.,* 88 Ohio App.3d 310, 623 N.E.2d 1281 (1993) (affirming an award of contractual attorney's fees upon foreclosure on the commercial real estate).

Most recently, in *Washington Mutual Bank v. Mahaffey,* 154 Ohio App.3d 44, 796 N.E.2d 39 (2003), the Second District Court of Appeals addressed the precise question at issue, to wit: whether a mortgagee could properly require, as a condition of reinstatement of a mortgage loan, the payment of attorney's fees. The mortgage at issue contained the following provision:

> 10. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay any amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. Borrower shall tender in a lump sum all amounts required to bring Borrower's account current, including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding.

*Id.* at 44. Pursuant to this provision, the mortgagee required the mortgagor to pay attorney's fees in order to reinstate his loan upon foreclosure. In challenging this requirement, the mortgagor cited "a number of Ohio cases holding that provisions in a mortgage instrument for the payment of attorneys fees, as part of the borrower's obligations upon foreclosure, [are] against public policy and void." *Id.* The court of appeals found those cases distinguishable, reasoning:

> Mahaffey's obligation to pay attorneys fees is not provided in the mortgage instrument in this case as an obligation upon foreclosure, but as a condition of reinstatement of the loan. While Mahaffey is entitled to all of the legal protections afforded under the laws pertaining to the foreclosure of mortgage liens, including the right of redemption, he is not entitled by law to reinstate a mortgage loan, once it is in default. Once a borrower defaults upon a mortgage loan, the lender is entitled, even if the borrower should exercise his right of redemption, to be paid in full and sever its relationship with the borrower. The bank chose to provide in its contract with Mahaffey for the possibility that the loan might be reinstated, preserving the relationship between borrower and lender, upon certain conditions. One of these is the payment of attorneys fees. We see nothing against public policy in imposing the requirement of the payment of attorneys fees expended in foreclosure proceedings as a condition of reinstatement of a mortgage loan. If the loan were not reinstated, the borrower would be entitled to its remedies in foreclosure, and it has expended at-

torneys fees toward that end. It is reasonable that the mortgagee should require, as a condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorneys fees expended in the foreclosure action that it is abandoning.

*Id.* The court of appeals thus held that the payment of attorney's fees was permitted, because they arose "merely [as] a condition of reinstatement, not [as] an obligation that arises in connection with the enforcement of the contract." *Id.*

■ Having trod through the murky waters left by the Ohio Supreme Court in the wake of *Nottingdale,* the Court concludes that the rationale employed by the Second District Court of Appeals is, indeed, the correct one. At the heart of Plaintiff's argument is the premise that payment of attorney's fees due to default is synonymous with the payment of attorney's fees in the context of reinstatement. In other words, as expressed by the bankruptcy court in *In re Landrum,* once void, always void. This premise is faulty. *Miller* and its progeny were concerned with attorney's fees constituting a penalty against the debtor upon default or breach of the contract. Due to the decision in *Nottingdale,* the continued viability of that holding is in doubt.[3] The Court need not resolve that question, however, because, as indicated in *Mahaffey,* the requirement of the payment of attorney's fees as a condition of reinstatement does *not* arise in connection with the enforcement of the mortgage contract, *i.e.,* the default itself.

As recognized in *Mahaffey,* upon default, the mortgagor has no obligation to

---

**3.** The continued vitality of *Miller* has been made even more questionable by the Ohio legislature's subsequent enactment of Ohio Rev.Code § 1301.21. That legislation provides that a lender may enforce a "commitment to pay attorneys' fees" upon default in a "con-

tract of indebtedness," such as a note or mortgage "incurred [other than] for purposes that are primarily personal, family or household." This section applies only to debts that exceed $100,000 at the time the contract was executed.

seek reinstatement of his mortgage. To the contrary, she may, *inter alia*, decide to allow the foreclosure proceedings to continue and to avail herself of the remedies available through that proceeding. Thus, the reinstatement provision in the mortgage creates no obligation to pay attorney's fees *upon default*. Consequently, the payment of attorney's fees as a condition of reinstatement does not implicate the public policy concern in *Miller* regarding the imposition of a penalty against the debtor upon default and its concern with usury.

Stated simply, under the current state of Ohio law, agreements to pay attorney's fees are not void under any and all circumstances. *See Nottingdale, supra.* To the contrary, the Ohio Supreme Court has recognized the right of individuals to agree to pay other's attorney's fees, even in the context of default or breach of contract, although with some limitations. *Id.* Assuming the continued viability of *Miller*, Defendant has made the payment of its reasonable attorney's fees a condition of reinstatement, not of default. Thus, those fees are permissible under Ohio law. In summary, the Court concludes that a provision in a mortgage which requires the payment of attorney's fees as a condition of reinstatement is allowed under Ohio law. The Court now turns to whether Plaintiff has stated viable claims, in light of this Court's understanding of Ohio law.

### B. *Plaintiff's Claims*

Turning to Plaintiff's Complaint, Davidson has alleged that "[o]n or about May 21, 2001, [WW & R] sent Ms. Davidson correspondence demanding foreclosure attorney fees and costs totaling $1,400 in order to reinstate the loan." (Compl.¶ 14). She has asserted that Defendant violated the FDCPA by attempting to collect fees related to default or foreclosure (Count One); that WW & R intentionally misrepresented its right to collect such fees (Count Two); that WW & R was unjust enriched by the collection of such money (Count Three); and that she is entitled to punitive damages (Count Four). As stated, *supra* at 7, Defendant asserts that Plaintiff has failed to state claims upon which relief may be granted. Plaintiff asserts that her claims cannot be dismissed at this juncture, because the contract is ambiguous as to whether attorney's fees are "expenses" under paragraph 18 of her mortgage. In addition, Plaintiff asserts that $1,400 was not a reasonable fee, given that the foreclosure case had not been completed at the time of the demand for fees. Although Plaintiff complains in her Opposition Memorandum that attorney's fees are not "expenses" and that the amount of fees might not be reasonable, such allegations are not included or reasonably inferred from her Complaint. Rather, Plaintiff has alleged only that WW & R's representation that it has a right to collect attorney's fees as a condition of reinstatement was unlawful. There are no allegations that WW & R misrepresented the amount of fees due, or that the requested attorney's fees do not fall within the scope of paragraph 18. Thus, those claims have not been properly plead. Because this Court has concluded that WW & R could properly collect attorney's fees incurred in the foreclosure action as a condition of reinstatement of the mortgage, Plaintiff's claims, as pled, must fail, as a matter of law.[4] Accordingly, Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6), is SUSTAINED.

For the foregoing reasons, Plaintiff's Motion for Leave to Perfect Service Out of

---

**4.** Because the Court has concluded that Plaintiff's claims must be dismissed, the Court will not address Defendant's additional argument that she should be equitably estopped from asserting her claims.

Time (Doc. # 13) is SUSTAINED. Defendant's Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(5) (portion of Doc. # 9), is OVERRULED. Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6) (portion of Doc. # 9), is SUSTAINED.

Because Plaintiff indicates that she intended to bring claims that WW & R misrepresented the amount of fees due and that the requested attorney's fees do not fall within the scope of paragraph 18, Plaintiff is granted leave to file, within twenty (20) days from date, an amended complaint, in accordance with this Court's ruling and subject to the strictures of Fed. R.Civ.P. 11. Should Plaintiff choose not to file an amended complaint within said time period, the captioned cause will be dismissed with prejudice.