**In re Hubert N. EVANS, Julia C. Evans, Debtors.**

No. 05–12040.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Jan. 20, 2006.

David A. Kruer, Dearfield, Kruer & Company LLC, Portsmouth, OH, for debtors.

Joel K. Jensen, Lerner, Sampson & Rothfuss, Cincinnati, OH, for Bankers Trust Company.

## ORDER

J. VINCENT AUG, JR., Bankruptcy Judge.

This matter is before the Court on the Debtors' "Objection to Proof of Claim Filed By Bankers Trust Company of California" (Doc. 20), on the response and memorandum filed by Bankers Trust (Docs. 27 & 35) and on the Chapter 13 Trustee's brief and memorandum in support of the Debtors' objection (Doc. 32). An evidentiary hearing was held on October 26, 2005.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Debtors filed their chapter 13 petition and plan on March 23, 2005. The plan provides for the payment of a mortgage arrearage in the amount of $6,470.28. On April 11, 2005, Bankers Trust filed a proof of claim asserting a secured claim for a mortgage arrearage in the amount of $16,642.28. That proof of claim was amended on July 14, 2005, to reflect a secured claim for the arrearage in the

amount of $17,397.82. Debtors' plan was confirmed by order entered on August 4, 2005.

The Debtors object to the inclusion of the following charges in Bankers Trust's secured claim for the mortgage arrearage, which essentially fall into the listed categories:

| Attorney fees: | | |
|---|---|---|
| Pre-petition | | |
| Foreclosure attorney fees | $1,700.00 | |
| Previous bankruptcy atty fees/costs | 1,950.00 | $3,650.00 |
| | | |
| Post-petition | | |
| Post-petition bankruptcy atty fees | $ 550.00 | 550.00 |
| | | |
| Title work: [1] | | |
| Foreclosure title work | $ 350.00 | |
| Title update work | 200.00 | |
| Foreclosure title insurance | 58.00 | 608.00 |
| | | |
| Costs: | | |
| Estimated court costs | $2,809.84 | |
| Escrow advance | 284.75 | |
| Property preservation | 225.45 | |
| Suspense balance | 13.20 | $3,333.24 |
| | | |
| Total | | $8,141.24 |

Debtors request that Bankers Trust's claim be disallowed in the amount of $8,141.24. They assert that inclusion of these fees and costs in the amount due to Bankers Trust violates §§ 1322(e) and 506(b) of the Bankruptcy Code [2] and that it also violates Ohio public policy. The Chapter 13 Trustee joins in the Debtors' objection with respect to the above claims with the exception of the escrow advance and the suspense balance. On the theories discussed below, Bankers Trust asserts that the above amounts are properly included in its proof of claim for the mortgage arrearage.

1. It was unclear whether the charges for the title work and costs were prepetition and/or postpetition.

2. This case was filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") on April 20, 2005 and prior to the October 17, 2005, effective date of BAPCPA. The amendments to

At the hearing, the parties stipulated to the following facts:

1. The loan documents executed between the parties contemplated the payment of the charges included in Bankers Trust's proof of claim.

2. The mortgage is undersecured.

3. Debtors stipulated for the purposes of the hearing only, that the charges accrued by the creditor are reasonable. The Debtors reserved the right to challenge specific charges at a later date.

### ISSUES AND DISCUSSION

1. In a chapter 13 case, must a creditor meet the requirements of both § 506(b) and § 1322(e) to be entitled to include its attorney fees, costs and charges in its secured claim for a mortgage arrearage?

   a. If the creditor does not meet the requirements of § 506(b) does that mean that it may still have a claim for attorney fees, costs and charges but that those amounts are unsecured?

   b. Can an unsecured claim be part of an arrearage claim pursuant to § 1322(e)?

2. Is a cure of a mortgage default pursuant to § 1322(b)(3) the equivalent of a reinstatement of a mortgage under the terms normally found in a residential mortgage?

11 U.S.C. § 506 determines when a claim is entitled to secured status but does

the Bankruptcy Code made by BAPCPA are not applicable in this case. Thus, all references to the Bankruptcy Code, and all citations to, or quotations of, specific Code provisions shall refer to the Code (or particular sections of the Code) prior to its amendment by BAPCPA-i.e., 11 U.S.C. §§ 101–1330.

not govern the actual allowance or disallowance of a claim. It provides:

§ 506. **Determination of secured status.**

. . .

To the extent that an allowed secured claim is secured by property the value of which, . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). Based on the parties' stipulation that Bankers Trust is undersecured, Bankers Trust does not meet the requirements of § 506(b) to include the above charges and costs as a secured part of its claim. However, Bankers Trust argues that the plain language of § 1322(e) provides that only the provisions of § 1322(e) are relevant to determine the amount of the arrearage owed by a debtor to a creditor and that the requirements of § 506(b) do not apply. On the other hand, the Debtors and the Chapter 13 Trustee assert that the requirements of both sections must be met.

Pursuant to § 1322(b)(3), the Debtors' plan may include provisions to cure its default with Bankers Trust. The amount necessary to cure the default is established by § 1322(e) which provides:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.

*Case Law Analysis*

Many oversecured creditors in this district, as noted in the cases below, have argued that only § 506(b) applies and the courts have found that the *oversecured* creditors must in fact meet the requirements of § 1322(e). We now have an *undersecured* creditor arguing that § 506(b) does not apply at all and that it only needs to meet the requirements of § 1322(e). Our research shows that the language of § 1322(e) is far from plain and clear. There is case law on both sides of this issue and the interplay between the sections is in a confusing state.

The Bankruptcy Appellate Panel for the Ninth Circuit found that

Although § 1322(e) appears to trump § 506(b), both sections potentially pertain when a secured creditor files a proof of claim, because it will not always be apparent that the debtor's chapter 13 plan will cure the default, and the case may be converted to or from chapter 7. The Code does not establish specific procedures for determining § 506(b) claims and § 1322 cure amounts.

*Atwood v. Chase Manhattan Mortgage Co. (In re Atwood),* 293 B.R. 227, 231 (9th Cir. BAP 2003) (reversing bankruptcy court where it failed to make a determination of reasonableness of attorney fees awarded in cure amount).

Cases in Ohio that have dealt with both § 506(b) and § 1322(e) involve a creditor that was oversecured and are thus, distinguishable from the case before us. *In re Lake,* 245 B.R. 282 (Bankr.N.D.Ohio 2000) and *In re Landrum,* 267 B.R. 577 (Bankr. S.D.Ohio 2001) (Hopkins, J.) are cited by Banker's Trust as support for the position that § 506(b) does not apply. However, the applicability of § 506(b) was not at issue or analyzed in *In re Lake,* and as noted, the creditor in *In re Landrum,* was oversecured. *See also In re Shaffer,* 287 B.R. 898 (Bankr.S.D.Ohio 2002) (Hopkins, J.) (oversecured creditor who met the requirements of § 506(b) must still meet the

requirement of § 1322(e) that the attorney fees incurred with respect to an arrearage must be permitted by state law); *In re Tudor*, No. 03–68935, (Bankr.S.D.Ohio Dec. 9, 2005) (Hoffman, J.) (same). These cases have not dealt squarely with the argument that the creditor must meet the requirements of both sections.

Other courts have stated that both sections must be considered but the creditor may be entitled to attorney fees on the basis of § 1322(e) even if it does not meet all the requirements of § 506(b). *In re Taylor*, No. 02–10695, 2003 WL 22282173, at *3 (Bankr.D.Vt. Oct.1, 2003) (considering both §§ 506(b) and 1322(e) on an alternative basis and finding that "the fact that [the creditor] was not an oversecured creditor does not disqualify it from collecting attorney's fees under § 1322(e).").

Still other courts have held that § 506(b) does not apply when determining a creditor's claim to cure a default. *See Smiriglio v. Hudson United Bank*, 98 Fed.Appx. 914 (3d Cir.2004) (§ 1322(e) supersedes § 506(b) at least in cases involving fees included in a claim for arrears); *Key Bank of N.Y. v. Harko (In re Harko)*, 211 B.R. 116, 122 (2d Cir. BAP 1997) ("the introductory language [of § 1322(e) ], which specifically references §§ 506(b) and 1325(a)(5), makes clear that these sections have no applicability in a cure situation."); *In re Plant*, 288 B.R. 635 (Bankr.D.Mass.2003) (§ 506(b) is inapplicable to a court's review of attorney fees in a case where a debtor seeks to cure a prepetition default over the life of a chapter 13 plan pursuant to § 1322(b)(5)). One commentator has stated,

> For contracts entered into after October 22, 1994, 11 U.S.C. § 1322(e) makes no distinction between oversecured and undersecured claims. If a Chapter 13 plan cures default on an undersecured residential mortgage that was entered into after October 22, 1994, the amount necessary to cure default includes fees, expenses and other charges and interest to the extent allowed by the agreement and by nonbankruptcy law. The extent of security is irrelevant to new § 1322(e)—even if the residential mortgage is entirely unsecured, if the plan cures default, the mortgage holder will be entitled to recover whatever charges are allowed by the underlying agreement and nonbankruptcy law.

Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* § 138.1, at 138–5 (2000 & Supp. 2004).

We note that a fundamental problem with finding that § 506(b) is totally inapplicable when determining the amount of cure to be included in a chapter 13 plan, is that we write reasonableness of the fees and charges totally out of the requirements for the creditor to obtain those amounts. This concept is totally foreign to the Bankruptcy Code. Reasonableness of charges made against the debtor's estate is always of importance in the Bankruptcy Code. Nevertheless, it has been stated

> For contracts after October 22, 1994, a "reasonableness" limitation on late charges must be found in the contract or in nonbankruptcy law to fit within § 1322(e). The reasonableness requirement in § 506(b) or otherwise implied by federal law is not applicable under § 1322(e), except as provided in the contract or state law.

*Chapter 13 Bankruptcy* § 138.1, at 138–14.

*Meaning of "Notwithstanding"*

■ The key to unraveling this jumble of case law lies in defining one word. To determine whether Bankers Trust must meet the requirements of both § 506(b) and § 1322(e) we must determine the meaning of "notwithstanding" in

§ 1322(e)?[3] Does it mean that in spite of the fact that the creditor meets the requirements of § 506(b) with respect to its secured claim, that creditor must also meet the state law requirement of § 1322(e)?

Or does "notwithstanding" mean we ignore the fact that the creditor does not meet the requirements of § 506(b), and the amount to cure the creditor's arrearage only needs to be included in the agreement between the parties and allowed by state law?

According to one author,

The two sections differ in two respects: there is no "reasonableness" condition on curing default in § 1322(e); there is no requirement of compliance with "applicable nonbankruptcy law" in § 506(b).

Whatever potential there may be for conflict between § 506(b) and § 1322(e) is dissipated by statutory construction and the history of enactment.... Ordinary canons of statutory construction would interpret the "notwithstanding" in § 1322(e) to mean that § 1322(e) controls whether and to what extent fees, costs and other charges are allowed to cure default with respect to all mortgages entered into after October 22, 1994–including oversecured mortgages and including entitlements during the period between the petition and confirmation of a plan.

*Chapter 13 Bankruptcy* § 138.1, at 138–6.

We do not think the issue can be resolved that simply. Given the ambiguity in the language of the statute as shown by the above case law and the question of the meaning of "notwithstanding," it is appropriate to consider the legislative history which states that

This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, [508 U.S. 464,] 113 S.Ct. 2187[, 124 L.Ed.2d 424] (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable laws prohibit[ ] such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. *It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.*

H.R.Rep. No. 103–835 at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364 (emphasis added). If § 506(b) has no effect, then a creditor's claim for arrearage charges may be elevated from an unsecured to a secured position when there is

---

**3.** "Notwithstanding" means "without prevention or obstruction from or by; in spite of." As a conjunction "notwithstanding" means "although." *Webster's Third New International Dictionary*, 1545 (2002). In *Black's Law Dictionary* "notwithstanding" is defined as "[d]espite; in spite of" with the following example "<notwithstanding the conditions listed above, the landlord can terminate the lease if the tenant defaults>." *Black's Law Dictionary*, 1091 (7th ed.1999).

insufficient equity in the collateral to warrant secured status. Further, once transformed to a secured claim, Bankers Trust's fees and expenses will be paid ahead of the remaining unsecured creditors in the bankruptcy case. This is certainly providing the creditor with a windfall particularly if the case is later converted to a chapter 7. *See In re Atwood,* 293 B.R. at 231

What is important to consider in the legislative history is that § 1322(e) was added to the Bankruptcy Code to address the Supreme Court's decision in *Rake* that in effect required the bankruptcy courts to grant mortgagees interest on interest. The concept of the legislators in adopting § 1322(e) was to *add* a requirement that if a creditor was to receive interest on interest, then it also had to be allowed by the laws of the relevant state. This indicates to this Court that the purpose of § 1322(e) was not to supplant but to supplement the requirements of § 506(b). Section 506(b) first establishes the amount of the creditor's claim that is secured. If a fee cannot be part of a creditor's secured claim in the first instance, how can it become a part of the secured arrearage claim?

■ Based on our review of the two statutes, we find that the appropriate analysis of these two statutes is: Notwithstanding the fact that the creditor has met the requirements of § 506(b)[4] entitling it to secured status for its claim for attorney fees or other expenses, when determining the amount required to cure a default, the creditor must also show that such expenses meet the additional requirement of § 1322(e) that such fees and expenses are permitted by state law. In analyzing the statute in this manner, we give effect to the rule of statutory construction that when two statutes appear to be in conflict, an interpretation should be made that

gives effect to both statutes. *Shumate v. Patterson,* 943 F.2d 362 (4th Cir.1991), *aff'd,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *In re Andrews,* 301 B.R. 211 (Bankr.N.D.Ohio 2003). Section 506(b) provides when a claim is entitled to secured status and § 1322(e) provides when such secured claim should be included in the mortgagee's arrearage claim.

■ Our analysis further gives effect to the rule of construction that a statute should not be interpreted so that the result is absurd. *See Deere Credit Servs. v. Tenn. Dept. of Agric. (In re Hollingshead),* 286 B.R. 622 (6th Cir. BAP 2002) (court may look beyond the statutory text where the plain statutory meaning leads to an absurd result). If we were to find that the language of the statute is plain and interpret the statute as Bankers Trust suggests, this would indeed lead to an absurd result. It is certainly absurd to read into the Bankruptcy Code the theory that reasonableness of fees does not apply in calculating cure amounts or that an unsecured debt could be elevated to the status of a secured debt when the debtor has no equity in the collateral. Both of these concepts are totally contrary to the policy and purpose of the Bankruptcy Code.

■ Section 506(b) applies only from the date of the filing of the petition through the confirmation date. *Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333 (11th Cir.2000), *cert. denied* 531 U.S. 1073, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001). Under this analysis, since Bankers Trust does not meet the requirement of § 506(b) that it is oversecured, then it is not entitled to secured status for any of its fees and expenses incurred prepetition through the confirmation date. This is not to say that Bankers Trust does not have a

---

**4.** Section 506(b) requires that: (i) the charges are provided for in the agreement between the parties; (ii) the creditor is oversecured, and (iii) the charges are reasonable.

claim for these expenses. We hold merely that such claim is not entitled to a secured status and therefore, cannot be included in the amount due Bankers Trust for its arrearage.

With respect to fees and charges incurred after the petition was filed and after the plan was confirmed, Bankers Trust cannot include those amounts in the arrearage claim since those amounts were not incurred or known at the time the plan was confirmed. Again, that is not to say that Bankers Trust cannot assert a claim for those expenses but merely that the claim will be a general unsecured claim. *Attorney Fees in Ohio.*

■ There is an alternate basis for granting the Debtors' objection with respect to Bankers Trust claim for attorney fees. Even if Bankers Trust met the requirement of § 506(b) that it was oversecured, the case law in this district clearly establishes that Bankers Trust still is not entitled under § 1322(e) to any of its attorney fees as part of its claim for arrears.[5] The case law in Ohio is very clear that attorney fee provisions in a mortgage contract are void and unenforceable as contrary to public policy. *Miller v. Kyle,* 85 Ohio St. 186, 97 N.E. 372 (1911). *See In re Landrum,* 267 B.R. 577; *In re Lake,* 245 B.R. 282; *In re Shaffer,* 287 B.R. 898 (all applying *Miller* in chapter 13 cases and finding attorney fees provisions void and unenforceable). *See also Dollar Bank v. Petroff (In re Petroff),* No. 00–8085, 2001 WL 34041797, slip op. at 7 (6th Cir. BAP July 25, 2001) (affirming bankruptcy court's determination that Ohio law forbids the payment of attorney fees to mortgagee).

2. Is a cure of a mortgage default pursuant to § 1322(b)(3) the equivalent of a reinstatement of a mortgage under the terms normally found in a residential mortgage?

■ Relying on *Davidson v. Weltman, Weinberg & Reis,* 285 F.Supp.2d 1093 (S.D.Ohio 2003), Bankers Trust asserts that it is entitled to its attorney fees in this case because the "transaction" between it and the Debtors is in effect a reinstatement. *Davidson* found that Ohio law does permit a mortgagee to assess its attorney fees against a mortgagor when the mortgagee agrees to a reinstatement. *Davidson,* however, dealt with a reinstatement of a mortgage pursuant to the terms of the mortgage and did not involve curing a default through the provisions of the Bankruptcy Code. Curing of a default through a chapter 13 plan and petition is not the equivalent of a "reinstatement."[6] *See In re Tudor,* No. 03–68935, slip op. at 11 & 34–40 (Bankr.S.D.Ohio Dec. 9, 2005) (providing a thorough analysis of this issue). Unlike the mortgagee in *Davidson* who was dealing with reinstatement outside of bankruptcy and strictly pursuant to the terms of the mortgage, the Debtors in this case are curing the default through the provisions of the Bankruptcy Code. There is nothing in the Bankruptcy Code that permits Bankers Trust to include its attorney fees in the cure amount in this context.

## CONCLUSION

Based on the foregoing, we SUSTAIN the Debtors' objection and find that Bank-

5. Bankers Trust's attorney fees total $4,200 including (i) foreclosure attorney fees of $1,700, (ii) previous bankruptcy attorney fees and costs of $1,950, and (iii) post-petition bankruptcy attorney fees of $550.

6. "Reinstate" means "[t]o place again in a former state or position; to restore." *Black's Law Dictionary,* 1290 (7th ed.1999).